### The HOME INDEMNITY COMPANY, Appellant,

v.

### HUMBLE OIL & REFINING COMPANY, Appellee.

#### No. 15386.

Court of Civil Appeals of Texas.

Dallas.

June 20, 1958.

Rehearing Denied July 11, 1958.

Strasburger, Price, Kelton, Miller & Martin, Hobert Price, Dallas, for appellant.

Kenneth C. Minter and Felix A. Raymer, Houston, for appellee.

YOUNG, Justice.

This suit involves the liability as between the parties hereto, of appellee, a self-insurer under The Texas Motor Vehicle Safety-Responsibility Law (Art. 6701h, Secs. 18(4), 21(b)2, Vernon's Ann.Civ.St., Acts 1951, 52nd Leg., p. 1220, Chap. 498) following accidental injuries and property damage sustained by Mrs. Tennie Reed at Overton on March 8, 1956 and caused by D. O. Cole, a Humble employee, while driving a Company-owned car. Plaintiff Insurance Company has brought suit seeking to charge defendant Oil Company with entire responsibility for the amount paid in settlement of claim; and has appealed from the adverse judgment rendered after hearing to the trial court.

The case is here on an agreed statement of facts; in substance as follows: Appellant is an Insurance Company, writing policies of public liability insurance on automobiles on a commercial basis for stipulated premiums; and appellee an integrated Oil Company, chartered under the Texas Business Corporation Act, with many hundreds of automobiles operating on the highways of both Texas and New Mexico. Upon passage of above Act appellee qualified as a "self-insurer" (Sec. 34) and as a prerequisite to so qualifying, Humble agreed with the State of Texas that (Sec. 18) with respect to accidents occurring while the Certificate of Self-Insurance was in force it "will pay the same

judgments and in the same amounts that the insurer would be obligated to pay under an owner's motor vehicle liability policy if it had issued such policy to said self-insurer."

Appellee had in its employ one D. O. Cole to whom it had assigned one of its automobiles for his use in the discharge of Company business; Cole also personally owning a car. On this *personal* car he had obtained a policy of public liability insurance from appellant, with a Form 80 Endorsement attached thereto. This Form 80 Endorsement is the one commonly referred to in the insurance business as the "Use of Other Cars", by terms of which Cole was fully covered with liability insurance while driving any other car, to the same extent as the coverage afforded when driving his own personal car, with this exception: The insurance coverage afforded by the Form 80 Endorsement was "excess" coverage; that is to say, when Cole was driving any other car than his own personal car, appellant was liable only for such damages as might be assessed against Cole which were not covered by "Other Valid and Collectible Insurance."

D. O. Cole became involved in a collision while driving the Company car, assigned to him by appellee as stated for his use in the discharge of Company business. The collision was due to the admitted negligence of Cole; resulting in material property damage and some personal injury for which he became admittedly liable to the injured party. The accident occurred, however, at a time when Cole was engaged upon a personal mission, wholly independent of the performance of any duties for his employer, Humble.

Mrs. Reed making claim against Cole for the damages sustained, he in turn notified plaintiff Insurance Company of such claim, as required by his personal policy of insurance. Plaintiff, taking the position that Humble's Certificate of Self-Insurance constituted "Other and Valid Collectible Insurance", then demanded of Humble that

it assume all liability for the damages sustained by the injured party, Humble refusing. Pending dispute between appellant and appellee as to liability, Mrs. Reed agreed to accept a sum of money ($8,400, of which $5,000 was for property damage and $3,400 for personal injuries) which appellant deemed it advantageous to pay; thus eliminating any dispute with said claimant. Appellee concurring in this, an agreement was worked out under terms of which appellant and appellee contributed equally toward such settlement; but reserving the right to litigate as between themselves the matter of liability. This suit resulted, plaintiff seeking a return of the $4,200 paid in the settlement, together with a finding that defendant was wholly liable to the injured party; defendant praying that plaintiff take nothing and in cross-action for return of the $4,200 contributed by it to aforesaid settlement. As both parties agree, this as a case of first impression.

The Texas Motor Vehicle Safety-Responsibility law (Art. 6701h) in part caption recites: "An Act to encourage safer use of motor vehicles on the streets and highways of Texas and to deny the privilege of driving to reckless and financially irresponsible persons by requiring security of owners and operators of motor vehicles following accidents and by providing for proof of financial responsibility for the future." Sections 4 and 5 set forth procedures to be taken by the Department of Public Safety relative to owners and operators of motor vehicles who may become involved in such an accident in which any person is killed or injured, or in which damage to the property of any one person in excess of $100 is sustained; a failure in the respects mentioned resulting in suspension of driver's license of operator and loss of registration certificate of the vehicle itself. These penalties may be avoided (Sec. 5(c)) "to such operator or owner if such owner had in effect at the time of such accident a motor vehicle liability policy with respect to the motor

vehicle involved in such accident * * ;" or "qualifying as a self-insurer under Section 34 of this Act, * * *." The latter section, paragraph (a) provides that "Any person in whose name more than 25 motor vehicles are registered may qualify as a self-insurer by obtaining a certificate of self-insurance issued by the Department * * *." Section 18, subdv. 4, provides in part that a certificate of self-insurance shall be supplemented "by an agreement by the self-insurer that, with respect to accidents occurring while the certificate is in force, he will pay the same judgments and in the same amounts that an insurer would have been obligated to pay under an owner's motor vehicle liability policy if it had issued such a policy to said self-insurer." Section 21 provides in part: "Sec. 21(a) A 'motor vehicle liability policy', as said term is used in this Act shall mean an owner's or an operator's policy of liability insurance, certified as provided in Section 19 or Section 20 as proof of financial responsibility, and issued, except as otherwise provided in Section 20, by an insurance company duly authorized to write motor vehicle liability insurance in this State, to or for the benefit of the person named therein as insured. (b) Such owner's policy of liability insurance: * * * 2. Shall pay on behalf of the insured named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, all sums which the insured shall become legally obligated to pay as damages arising out of the ownership, maintenance or use of such motor vehicle or motor vehicles within the United States of America or the Dominion of Canada, subject to limits exclusive of interest and costs, with respect to each such motor vehicle, as follows: Five Thousand Dollars ($5,000) because of bodily injury to or death of one (1) person in any one (1) accident and, subject to said limit for one (1) person, Ten Thousand Dollars ($10,000) because of bodily injury to or death of two (2) or more persons in any one (1) accident, and Five Thousand Dollars ($5,000) because of injury to or destruction of property of others in any one (1) accident."

In initial points, the Insurance Company takes the affirmative and Humble the negative of the following question of Law: Does this Certificate of Self-Insurance, as between the parties to this appeal, constitute "other and valid collectible insurance" within the meaning and intent of the provisions contained in the Form 80 Endorsement attached to the policy of liability insurance issued by appellant to D. O. Cole? Further points complain of the trial court's error "in holding that the liability of Humble Oil & Refining Company to assume the liability of an insurance company with reference to the car involved in this case was secondary and passive"; and "in holding that the Home Indemnity Company, by virtue of its policy of insurance covering the personal car of D. O. Cole, was primarily liable in connection with the accident involved here, which did not involve said car, but involved a car owned by Humble Oil and Refining Company which the said Humble Oil and Refining Company had insured by a certificate of self-insurance." In this connection it is the contention of appellant that "By becoming such a self-insurer, it has placed itself in exactly the same position as if it were an insurance company which had written a liability policy on the vehicle in question." And that "Humble has obtained the advantages of the law by becoming a self-insurer, and it appears quite clear to us that it must now perform the obligation imposed upon it by that same law." However, we think that the trial court has correctly disposed of the law question above postulated, by rendition of judgment in favor of appellee. Our conclusions to that effect will consist largely of a restatement of principles as set forth in the well reasoned reply brief of counsel for appellee.

The record reflects the following premises without dispute: (1) That the legislative intent of the Safety-Responsibility Act was to protect the public from judgment proof negligent drivers by requiring security of owners and operators of motor vehicles following accidents and injuries to others on Texas streets and highways; defendant's agreement as self-insurer with the State being expressly confined to such an obligation; (2) that Humble as owner of the motor vehicle and under its certificate of self-insurance became *jointly* liable to the injured party along with the negligent driver, employee Cole; Humble conceding that so far as the State of Texas and the injured party are concerned, it would be obligated to pay any judgment which an insurance carrier would be required to pay had a policy of liability insurance been issued by an insurance carrier to it; (3) that there is here no question of common law liability as regards defendant Humble, since it is admitted that the employee Cole was on an independent mission at the time of accident, wholly outside the scope of his employment; but not so, concerning the appellant's insured whose negligence was such as to render him liable to the injured party at common law for all damages sustained; (4) that Cole as a tort feasor at common law was *primarily* liable for his negligent driving; and by filing a certificate of self-insurance, the car owner has merely contracted with the State of Texas that *he too* agrees to compensate an injured party for negligent acts of the driver, if an insurance company would be required to do so, had it issued a policy of liability insurance to the self-insurer. But the owner's or self-insurer's liability is *secondary* to that of the negligent driver; and had the injured party sued Cole, appellant's insured and this appellee jointly, (because its negligence was secondary only) Humble could have pleaded over against Cole, the actively negligent party, and could have recovered judgment against him for such sum as was decreed

against it. New Nueces Hotel Co. v. Sorenson, 124 Tex. 175, 76 S.W.2d 488. Under the contention made, appellant would seek to reverse the situation. But to relieve the Home Indemnity Company of primary liability in this case, the "other collectible insurance" must be insurance inuring to the benefit of its policy holder Cole and "collectible" by him. He could not sustain a suit against Humble, his employer, for recoupment of damages paid by him in satisfaction of a judgment rendered against him as a result of his own *primary* negligence; and neither can the Insurance Company in its own behalf, as an indemnitor and on exactly the same footing as Cole, its insured. Pasley v. American Security Co. of N. Y., Tex.Civ.App, 253 S.W.2d 86.

We may properly quote further from appellee's reply brief: "The fallacy of Appellant's position lies in the fact that it makes an unwarranted assumption as to the actual provisions of the Motor-Vehicle law. Appellant proceeds upon the erroneous assumption that by virtue of its certificate of self-insurance appellee has assumed all the obligations which arise under a Texas Standard Policy of Automobile Liability Insurance. Nothing could be further from the truth, for the full extent of the obligations assumed by a self-insurer is set out in Section 18(4) of the Motor Vehicle Safety-Responsibility Act, which provides that the self-insurer shall file with the State an agreement 'that, with respect to accidents occurring while the certificate is in force, he will pay the same judgments and in the same amounts that an insurer would have been obligated to pay under an owner's motor vehicle liability policy if it had issued such a policy to said self-insurer'. To say that a self-insurer will pay the same judgments and in the same amounts as an insurance company would have had to pay is one thing; while it is obvious that to assume all the obligations that exist under a Standard Automobile

Liability Policy is quite another thing. A Standard policy calls for the assumption of many obligations other than the payment of a judgment rendered against the insured— among which, and probably the most important, is to indemnify the insured against loss, even as against his own negligence. The guarantee by a self-insurer to pay any judgment that an insurance carrier would have to pay can operate only for the benefit of the State of Texas and the injured party and cannot in any sense of the word be construed to operate for the benefit of the negligent driver (even though he be an employee), and deprive the self-insurer of his right to judgment over against him. And, in the event of a judgment over against the negligent driver, Appellant's Endorsement 80 would operate to indemnify the negligent driver against such loss, for indemnification against loss to the insured is precisely what the policy contract of the Home Insurance Company has provided it will do."

Moreover, Humble Oil & Refining Company is organized and chartered under the new Business Corporation Act. A concern chartered under that Act is expressly forbidden to engage in the insurance business. See Part Two, Article 2.01, subd. B(4), (a) Business Corporation Act, Vernon's Texas Civil Statutes, Vol. 3–A. Says appellee in this connection: "An agreement to pay certain specified types of judgments in return for the privilege of obtaining the benefits of operating its vehicles on the highways of Texas as a self-insurer is, indeed, in furtherance of Appellee's corporate purposes and powers. To obligate itself as an insurance carrier to indemnify its employees against loss resulting from their own negligent driving is not in furtherance of its corporate purposes, and any attempt to do so would be an ultra vires act and void." We agree with the argument just above quoted and accordingly sustain appellee's counterpoint two, advanced as ground of affirmance—"for a decree in favor of appellant would, necessarily, have proceeded upon the assumption that Appellee had engaged in ultra vires acts in engaging in the insurance business, thus placing the Business Corporation Act in conflict with the Motor Vehicle Safety-Responsibility Act."

Affirmed.