**HARTFORD CASUALTY INSURANCE COMPANY, Appellant,**

v.

**BUDGET RENT–A–CAR SYSTEMS, INC., Appellee.**

No. 05–89–00314–CV.

Court of Appeals of Texas, Dallas.

June 26, 1990.

Rehearing Denied Aug. 24, 1990.

Linda F. Jenkins, Donald A. Blackwell, Dallas, for appellant.

Sidney H. Davis, Jr., Dallas, for appellee.

Before HOWELL, ROWE and KINKEADE, JJ.

## OPINION

HOWELL, Justice.

Hartford Casualty Insurance Company appeals from an adverse judgment rendered in an action filed by Budget Rent–A–Car Systems, Inc. The suit involved issues of automobile liability coverage and the duty to defend.

## FACTS

The facts were largely undisputed and most of them were established by stipulation. Douglas H. Miller rented a car from Budget pursuant to a written rental agreement. While driving the rented car, Miller struck a pedestrian, Polly Pandres. Pandres sustained bodily injuries which ultimately resulted in her death. Pandres sued Miller and Budget, seeking damages for her personal injuries. After her death, other parties were substituted as plaintiffs.

Paragraph number 9 of the rental agreement entered into between Miller and Budget stated:

> BUDGET provides automobile liability coverage *only* for Renter and any named Additional Driver, in accordance with the standard provisions of a Basic Automobile Liability Insurance Policy (or as a qualified Self-insurer instead of or in combination with such a policy) for bodily injury, including death (limits $100,000 each person, $300,000 each occurrence regardless of the number of insureds) and property damage (limit $25,000 each occurrence), arising from use or operation of Vehicle as permitted by this Agreement. BUDGET and Renter waive uninsured motorist, supplemental no-fault and other optional coverages; and, if such coverages cannot be waived, automatically reduce such coverages to the minimum requirements of any financial responsibility or other applicable law of any jurisdiction which imposes coverage for Renter or any Additional Driver.
>
> (a) The insurance BUDGET provides Renter automatically conforms to any applicable statute of the state or other jurisdiction which imposes coverages for the benefit of Renter or any Additional Driver even if this Agreement would otherwise exclude such coverage.
>
> (b) A copy of a Basic Automobile Liability Insurance Policy is available for inspection upon request.
>
> (c) The liability coverage described in No. 9 will be used before any other insurance available to Renter or any Additional Driver.
>
> (d) Renter shall defend and indemnify BUDGET from all loss, liability and expense in excess of the insurance amounts stated in this Agreement which results from bodily injury, death or property damage arising out of the use or operation of Vehicle.
>
> (e) As an insured under BUDGET's liability insurance policy, Renter agrees to all the terms, conditions, limitations and restrictions of that policy. Renter must immediately report any accident to BUDGET at the renting location and to the police or other law enforcement agency, must immediately deliver to BUDGET at the renting location every document relating to any accident or to any claim or legal action arising out of any accident; and must cooperate with BUDGET and its insurer in the investigation and defense of any accident, claim or legal action.

(Emphasis in original.)

At all relevant times, Miller was also insured by Hartford pursuant to a Comprehensive Automobile Liability Insurance policy. This policy contained two provisions pertinent to this suit. One provision stated that:

> The company will pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as damages because of
>
> Coverage C. *bodily injury* or
> Coverage D. *property damage*
>
> to which this insurance applies, caused by an *occurrence* and arising out of the ownership, maintenance or use, including loading and unloading, of any *automobile*, and the company shall have the right and duty to defend any suit against the *insured* seeking damages on account of such *bodily injury* or *property damage*, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability

has been exhausted by payment of judgments or settlements.

(Emphasis in original.) The second relevant policy provision stated that:

> With respect to a *hired automobile*, or a *non-owned automobile*, this insurance shall be excess insurance over any other valid and collectible insurance available to the *insured.*

(Emphasis in original.)

After it had received notice of the Pandres claim, Hartford advised Milton Pandres and Miller (the insured) that Hartford's coverage was excess only. After the Pandres suit was filed against Miller and Budget, Budget's defense counsel notified Hartford that he had been retained to defend the suit. At all relevant times, Budget was a licensed and approved self-insurer under the Texas Safety Responsibility Law. *See* TEX.REV.CIV.STAT.ANN. art. 6701h, §§ 18, 34 (Vernon 1977).

After discovery revealed that Pandres' medical bills amounted to approximately $190,000, Budget notified Hartford that Budget thought it appropriate to tender its $100,000 limit on behalf of Miller. Hartford declined to assume the defense of Miller, asserting that the Budget coverage was primary and that the Hartford coverage was excess only. The Pandres suit was thereafter settled by payment to the plaintiffs of $550,000 on behalf of the defendants, Miller and Budget. Of that sum, Budget paid $100,000 and Hartford paid $450,000. Budget and Hartford have stipulated that the settlement was necessary and reasonable in amount and made in good faith by all parties.

Budget spent $16,561.28 in defending the Pandres suit. Budget and Hartford have stipulated that this sum was reasonable in amount and that the cost of defense was necessarily incurred. At some time after the Pandres suit was filed, Budget filed this separate action against Hartford. The original petition is not in the record. By its first amended original petition, the only trial pleading in the record, Budget pleaded much of the foregoing and pleaded that the Pandres action "has now been settled by the payment of $550,000 on behalf of Mr.

Miller to the Pandres Plaintiffs. Of that sum, $100,000 was paid by Budget (as it had offered to do since September 8, 1986), and $450,000 was paid by Hartford." It further pleaded that the court had jurisdiction under "the Texas Uniform Declaratory Judgment Act ... to determine the duties and liabilities of the parties." It pleaded damages in defending and settling the Pandres suit of $116,561.28 plus "[a]ttorney's fees ... for the prosecution of this suit."

The trial court rendered judgment for the said $116,561.28. It also awarded $5,000 in attorney's fees "for the prosecution of this suit."

## LIABILITY COVERAGE

█ In its first point of error, Hartford contends that the trial court's first six conclusions of law were erroneous as a matter of law. Three of those conclusions were concerned with the issue of liability coverage. The trial court concluded that Budget's liability coverage did not constitute "other valid and collectible insurance" because Budget was a self-insurer. The trial court therefore concluded that Hartford's coverage was primary and that Hartford was required to reimburse Budget for Budget's $100,000 contribution to the settlement of the Pandres suit. Hartford contends that these conclusions were erroneous because Budget's status as a self-insurer did not alter its independent contractual obligation to indemnify Miller for losses up to $100,000 per person injured.

The parties' dispute in this case turns on interpretation of the excess insurance/hired automobile clause of the Hartford policy. That provision states: "With respect to a *hired automobile*, or a *non-owned automobile*, this insurance shall be excess insurance over any other valid and collectible insurance available to the *insured.*" Simply stated, Budget contends that its liability coverage was not "other valid, and collectible insurance," relying on its status as a licensed self-insurer, whereas Hartford contends that the Budget coverage was valid and collectible insurance. Hartford also notes that the Budget rental agreement provided that

"[t]he liability coverage described [herein] will be used before any other insurance available to Renter;" there is no doubt that each of the contracts involved in this case would have provided coverage in the absence of the other contract.

Both parties rely on two cases in support of their arguments as to whether the coverage provided by Budget was "other valid and collectible insurance," although Hartford's reliance is more accurately characterized as being based on factual distinctions between those cases and this case. *See Allstate Ins. Co. v. Zellars*, 462 S.W.2d 550 (Tex.1970); *Home Indem. Co. v. Humble Oil & Refining Co.*, 314 S.W.2d 861 (Tex.Civ.App.—Dallas), *writ ref'd n.r.e. per curiam*, 159 Tex. 224, 317 S.W.2d 515 (1958). We agree with the parties that the issue of liability coverage for the Pandres claim is determined by resolution of the question as to whether the Budget coverage was "other valid and collectible insurance" within the meaning of the Hartford excess insurance/hired automobile clause. We also conclude that the *Home Indemnity* and *Zellars* cases are determinative; therefore, analysis of those two cases is required.

In the *Home Indemnity* case, an employee of Humble Oil was assigned a company car for use in the discharge of company business. Humble had qualified as a self-insurer under the Texas Safety Responsibility Law and had agreed with the State of Texas that, with respect to accidents occurring while Humble's certificate of self-insurance was in effect, Humble would "pay the same judgments and in the same amounts that an insurer would have been obligated to pay under an owner's motor vehicle liability policy if it had issued such a policy to said self-insurer." *Home Indemnity*, 314 S.W.2d at 862–63; *see* TEX. REV.CIV.STAT.ANN. art. 6701h, §§ 18, 34 (Vernon 1977). The employee had obtained personal liability insurance from Home Indemnity. The Home Indemnity policy contained an endorsement under which the employee was covered while driving any car other than his personal car; however, such coverage was "excess" coverage in that Home Indemnity was liable only for

damages which were not covered by "Other Valid and Collectible Insurance." *Home Indemnity*, 314 S.W.2d at 863.

While driving the company car, the employee was involved in a collision that was due to his admitted negligence, and he was admittedly liable for the resulting property damage and personal injuries. At the time of the accident, the employee was on a wholly personal mission, independent of the performance of any duties for Humble, his employer. Subject to ultimate resolution of the dispute between Home Indemnity and Humble as to liability, both Home Indemnity and Humble contributed equal amounts of money in settlement of the negligence claim against the employee. A suit between Home Indemnity and Humble followed, each party claiming reimbursement of the amount contributed to the settlement. This Court affirmed a judgment rendered in favor of Humble. *Id.* at 863, 866.

In deciding the *Home Indemnity* case, this Court considered a number of relevant factors. The Court noted that the acquisition of a certificate of self-insurance did not mean that the self-insurer had assumed all obligations which arise under a Texas standard policy of automobile liability insurance. *Id.* at 865. In this regard, the Court observed that the only relevant contractual obligation involved in the case was the one between Humble and the State of Texas, by which Humble agreed to pay the same judgments in the same amounts as an insurance company would have had to pay. *Id.* The Court further noted that a standard automobile liability policy involved many obligations other than the payment of judgments; most importantly, such a policy required the insurer to indemnify the insured against losses, including losses caused by the insured's own negligence. *Id.* at 865–66. The Court stated that a self-insurer's guarantee to pay any judgment that an insurance carrier would have had to pay operated only for the benefit of the State of Texas and the injured party. It did not operate for the benefit of the negligent driver/employee, nor did it deprive the employer/self-insurer of its right

to a judgment against its negligent employee. *Id.* at 866. The self-insurer's liability was said to be secondary to that of the negligent driver/employee (since the employee was on a strictly personal mission at the time of the accident and Humble merely owned the company car). *Id.* at 865; *see Zellars,* 462 S.W.2d at 552. If the injured party had sued both the employee and Humble, Humble could have cross-claimed against its employee and recovered judgment against him for any sum decreed against Humble. *Home Indemnity,* 314 S.W.2d at 865.

Based on its consideration of the pertinent factors discussed above, this Court articulated the principles deemed to be applicable to the case:

> [T]o relieve the Home Indemnity Company of primary liability in this case, the "other collectible insurance" must be insurance inuring to the benefit of its policy holder [the employee] and "collectible" by him. He could not sustain a suit against Humble, his employer, for recoupment of damages paid by him in satisfaction of a judgment rendered against him as a result of his own *primary* negligence; and neither can [Home Indemnity] in its own behalf, as an indemnitor and on exactly the same footing as [the employee], its insured.

*Id.* (emphasis in original). This language was quoted with approval by the Supreme Court of Texas in the *Zellars* case. *See Zellars,* 462 S.W.2d at 552. The Supreme Court noted in *Zellars* that the essential facts of the *Home Indemnity* and *Zellars* cases were indistinguishable. *Id.* One of the issues in *Zellars* was the same issue discussed in *Home Indemnity,* and the Supreme Court basically followed this Court's *Home Indemnity* analysis and reasoning in deciding the issue in *Zellars.* *Id.*

We determine that the principles announced in *Home Indemnity* are applicable to this case. However, there are some important factual differences between that case and this case. When the *Home Indemnity* principles are applied to the facts of this case, such application leads to a result different from the result reached in *Home Indemnity.*

In the *Home Indemnity* case, the only pertinent contract was the agreement between Humble and the State of Texas to the effect that Humble would pay the same judgments that an insurer would have had to pay. There was no relevant contract between the self-insurer and its employee/driver. In the instant case, there is a contract between the self-insurer (Budget) and its customer/driver (Miller). That contract (the car rental agreement) obligated Budget to provide automobile liability *coverage* to the renter for bodily injury, including death, arising from use or operation of the rented vehicle. Since the issue under consideration involves liability *coverage,* this contract is obviously relevant. Thus, unlike Humble, Budget entered into a separate contractual agreement obligating it to indemnify the driver of its vehicle; this agreement was in addition to its contract with the State of Texas requiring the mere payment of judgments. Moreover, the rental agreement, unlike Humble's agreement with the state, clearly operated for the benefit of the negligent driver (Miller). Unlike the employers in *Home Indemnity* and *Zellars,* Budget was precluded by its rental agreement with Miller from attempting to recover from Miller any amounts paid by Budget up to its contractual limits of liability.

Budget also agreed that its liability coverage provided to Miller would "be used before any other insurance available to Renter." On the other hand, the Hartford policy provided that the coverage provided to Miller would, "[w]ith respect to a *hired automobile,* or a *non-owned automobile,* ... be excess insurance over any other valid and collectible insurance available to the *insured.*" Under the principles delineated in *Home Indemnity,* "other valid and collectible insurance" must be collectible insurance inuring to the benefit of the insured driver. We determine that the coverage provided by Budget was such insurance.

We readily acknowledge that Budget's primary business did not involve the provi-

sion of insurance; it involved the renting of cars. Nevertheless, Budget did contract to provide automobile liability *coverage* to Miller. Its rental contract used the words "coverage" and "insurance" interchangeably. Its rental contract also referred to the renter as an "insured." As between Budget and Miller, Budget obligated itself to provide automobile liability coverage that was, in substance, insurance. Moreover, that coverage inured to the benefit of Miller, "before any other insurance available to Renter." Had the Pandres plaintiffs obtained a judgment against Miller and had that judgment been satisfied out of Miller's assets, Miller would have had a claim against Budget for indemnification under the unambiguous terms of the rental agreement, up to the contractual limit of $100,000. This is the key distinction between *Zellars–Home Indemnity* and the case at bar.

We have examined all relevant provisions of both of the relevant contracts. We are obligated to enforce the intentions of the parties as written in accordance with the plain meaning of the terms used. Those intentions can be stated fairly simply. Budget agreed to provide automobile liability *coverage* to Miller for bodily injury, including death, arising from use or operation of the rental vehicle. Budget further agreed that this liability *coverage* would "be used before any other insurance available to Renter." For its part, Hartford agreed to pay on Miller's behalf all sums which Miller "shall become legally obligated to pay as damages because of ... *bodily injury* or ... *property damage.*" However, Hartford's contract provided that "[w]ith respect to a *hired automobile,* or a *non-owned automobile,* this insurance shall be excess insurance over any other valid and collectible insurance available to the *insured.*" We hold that the Budget coverage was "other valid and collectible insurance" under the pertinent principles stated in *Home Indemnity* and *Zellars.* Therefore, Budget's coverage was primary in accordance with Budget's and Miller's express agreement, and Hartford's coverage was excess in accordance with Hartford's and Miller's express agreement.

The rental contract between Miller and Budget called for Budget to provide "liability coverage ... in accordance with the standard provisions of a Basic Automobile Liability Insurance Policy." No particular policy provisions were set out; no particular carrier was specified. Budget was free to fulfill its contract by securing a policy from any reputable carrier; it was free to select various policy forms as long as the requirement of "Basic Automobile Liability" coverage was afforded.

Even further, the rental contract made it optional with Budget to procure insurance or to self-insure. Miller was given no say in the matter; Budget was not even obligated by its contract to disclose how it had chosen to fulfill its obligation for basic coverage. We decline to hold that Budget retained the power under its contract to reduce Miller's rights by electing to self-insure rather than to obtain an actual insurance policy for his protection. Our only remaining alternative is to hold that under the rental agreement Miller was entitled to the identical coverage or protection, regardless of whether Budget chose to purchase an insurance policy or to exercise its self-insurance option. It follows that the self-insurance coverage provided by the rental agreement was the equivalent of "other valid and collectible insurance" as specified in the Hartford policy.

We cannot allow self-insurers to enter into contracts whereby they purport to provide "liability coverage" and leave them free to ignore their contractual obligations. We sustain Hartford's first point of error insofar as it asserts that the trial court's conclusions of law regarding liability coverage were erroneous. Contrary to those findings, we hold that Budget's coverage was "other valid and collectible insurance," that Budget's coverage was primary, that Hartford's coverage was excess, and that Hartford is not required to reimburse Budget for Budget's $100,000 contribution to the Pandres settlement.

## DUTY TO DEFEND

■ Hartford also argues that Budget had a duty to defend and that it was there-

fore error to order Hartford to reimburse Budget for the attorney's fees incurred by Budget in performing such contractual duty. This claim again turns on a construction of the rental agreement. Specifically, it turns on the question whether an insurance policy meeting the definition of "Basic Automobile Liability coverage" includes the duty to defend. We hold that it does. On judicial knowledge, we hold that automobile liability insurance policies commonly obligate the insurer to defend liability claims against the insured. In this connection, we note that the Texas Personal Auto Policy promulgated by the State Board of Insurance pursuant to article 5.96 of the Insurance Code contains a duty to defend. *See* INDEPENDENT INSURANCE AGENTS OF TEXAS, TEXAS PERSONAL AUTO POLICY HANDBOOK 9 (1989); TEX.INS.CODE ANN. art. 5.96 (Vernon Supp.1990). We again hold that Miller had neither greater nor lesser rights under the rental contract depending on whether Budget exercised its option to self-insure. Had Budget purchased insurance, it would have been obligated to purchase a policy requiring the carrier to defend claims brought under the policy. Nothing less would have satisfied the obligation to provide "Basic Automobile Liability Insurance." For the same reasons that Budget may not have reimbursement for the amounts of "coverage" that it contracted to provide, it may not have reimbursement of costs of defending the Pandres claims.

*Sherman Simon Enterprises, Inc. v. Lorac Service Corp.,* 724 S.W.2d 13 (Tex. 1987), relied on by Budget, does not hold to the contrary. In that case, involving a similar car rental agreement, the rental company did in fact provide insurance, and that policy specifically included a provision obligating the carrier to defend. That rental customer there suffered a take nothing judgment because it only sued the rental company and only claimed misrepresentation under the DTPA by the rental company. The Supreme Court entered a take nothing upon the restrictive holding that inasmuch as a policy had been procured, there was no misrepresentation. *Id.* at 14–16. The failure of the insurance carrier to perform was not an issue. No complaint had been made concerning the carrier's failure to defend. Comparison to the case at hand is superficial.

### DECLARATORY JUDGMENT ATTORNEY'S FEES

■ In its final point of error, Hartford contends that the trial court erred in awarding attorney's fees to Budget for the prosecution of this action. Inasmuch as we have rendered judgment that Budget take nothing on its claims for reimbursement, this point must be sustained, at least in part. The only remaining question is whether we should remand the attorney's fee issue pertaining to the present action to the trial court, or should we render judgment upon it also. *See Citicorp Real Estate, Inc. v. Banque Arabe Internationale D'Investissement,* 747 S.W.2d 926, 931 (Tex.App.—Dallas 1988, writ denied). Under the circumstances shown, we reverse and render the entire case.

In its amended petition, discussed above, Budget did include declaratory relief claims along with damage claims. It also pleaded for attorney's fees for prosecuting the within action but it failed to specify a basis in law for its attorney's fee claim. In its motion for judgment, Budget pleaded, "[S]ince this is a suit *on a contract,* Budget is entitled to recover its attorney's fees incurred in pursuing this action" (emphasis added). In its brief to this Court, Budget expressly relies on both the declaratory judgment act, TEX.CIV.PRAC. & REM.CODE ANN. § 37.009 (Vernon 1986), and the statutory provision for attorney's fees when suit is brought on a contract. TEX.CIV.PRAC. & REM.CODE ANN. § 38.001 (Vernon 1986).

Budget's apparent primary theory that it was entitled to the fee under the suit-on-contract statute can quickly be dispatched. By its plain terms, the statute only provides for the recovery of attorney's fees *"in addition* to the amount of a *valid* claim." *Id.* (emphasis added). Inasmuch as we have found the underlying claim not valid, any attorney's fee award based on this statute necessarily must fall. *Id.; see Chapman Air Conditioning, Inc. v.*

*Franks,* 732 S.W.2d 737, 741 (Tex.App.— Dallas 1987, no writ).

■ The attorney's fee provision of the declaratory judgment statute is somewhat more expansive: "In *any* proceeding under this chapter, the court may award [*to either party*] costs and reasonable and necessary attorney's fees as are equitable and just." TEX.CIV.PRAC. & REM.CODE ANN. § 37.009 (emphasis added). Thus, where a claimant or a counter-claimant has properly invoked the declaratory judgment statute, either party may plead for and obtain attorney's fees. *See First Nat'l Bank v. John E. Mitchell Co.,* 727 S.W.2d 360, 363 (Tex. App.—Amarillo 1987, writ ref'd n.r.e.); *District Judges v. Commissioners Court,* 677 S.W.2d 743, 746 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). The award of attorney's fees is not limited to the plaintiff or to the party affirmatively seeking declaratory relief.

■ Turning to the position of Hartford, the defendant in the court below, we find that it pleaded only "a contractual right" to recover fees for the defense of the within action; in short, it did not invoke the attorney's fee provision of the Declaratory Judgments Act. Additionally, Hartford filed no point of error before us attacking the trial court's denial of its own fee claim. It follows that we are unable to consider, or to remand at Hartford's instance, any claim by Hartford for the possible award of a fee to Hartford pursuant to the declaratory judgment act, even though it has now prevailed. *See Larrumbide v. Doctors Health Facilities,* 734 S.W.2d 685, 687 (Tex.App.—Dallas 1987, writ denied); *Norton v. Martin,* 703 S.W.2d 267, 273 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.).

■ At the same time, we recognize that even though Budget is now the losing party upon the basic claim asserted in its pleadings, it is not ipso facto precluded from a fee claim under the Declaratory Judgments Act. *See District Judges,* 677 S.W.2d at 746; *see also Citicorp Real Estate,* 747 S.W.2d at 931. Based on the facts shown and the state of the record, we nevertheless render judgment upon this aspect of the case also.

We first observe that we consider it unlikely that Budget will desire to return to the trial court, now having been cast as the losing party, to argue that it is "equitable and just" that it, the losing party, should have attorney's fees for this action rather than the winning party, Hartford. A remand would possibly make it available for Hartford to seek to amend its own pleadings and contend for defensive declaratory judgment attorney's fees in its new role as the winning party. We do not apprehend that Budget will consider the possible exposure to a judgment against it to be worth the possible recovery that it, Budget, might obtain. Of course, we can consider the matter further on rehearing if Budget expresses the desire for a remand and presents some showing that it has an "equitable and just" claim for declaratory judgment attorney's fees.

In declining to remand, we have examined the briefs and have inspected the entire record; we find no suggestion therein of any special or peculiar circumstances that might arguably entice the court below to deny attorney's fees to the winner and award them to the loser. Lacking any suggestion to this effect, we would be simply placing the case into judicial orbit; it better suits the ends of justice to conclude it now. *See* TEX.R.APP.P. 81(c).

In *Citicorp,* the attorney's fee ruling was rather brief, containing little discussion of the principles involved and no citation of authority. Conceivably, contrary to our finding above, the court considered that the parties prevailing on appeal should have another opportunity to present their attorney's fee claims. On the other hand, it perhaps considered that the party who prevailed in the trial court but who lost on appeal should have another opportunity to invoke the trial court's discretion claiming that it would nevertheless be "equitable and just" that it, the now-losing party, should have attorney's fees, regardless. We note that in *Citicorp,* there were four parties, each seeking affirmative relief under the Declaratory Judgments Act, whereas presently there was but one attempt to invoke that statute. Insofar as attorney's

fees to the non-prevailing party are concerned, we are inclined to regard *Citicorp* as a rather narrow exception to the general American rule, as we perceive it: A non-prevailing party is not entitled to attorney's fees. We recognize that the courts, in the handling of traditionally equitable matters, have wide powers to adjust the equities. Historically, cases such as *Citicorp*, involving the determination of the priority and enforcement of liens, have been long recognized as a subject matter peculiarly within the province of equitable jurisdiction.

As distinguished from *Citicorp*, the present case, at least at the time of trial, was strictly an action at law, a suit for damages. At the time that it filed its amended pleading, the only petition in the record, Budget had no need for declaratory relief whatever. It had already sustained its maximum arguable damages; it only had the need to plead for those damages, as it did, albeit that it interspersed into the pleading a needless declaratory relief claim. Under such circumstances, a pleading for declaratory relief will not lie. *See Joseph v. City of Ranger*, 188 S.W.2d 1013, 1014–15 (Tex.Civ.App.—Eastland 1945, writ ref'd w.o.m.); *see also Texas Liquor Control Bd. v. Canyon Creek Land Corp.*, 456 S.W.2d 891, 895 (Tex.1970). A declaratory relief plea may not be coupled to a damage action simply in order to pave the way to recover attorney's fees. *See John Chezik Buick Co. v. Friendly Chevrolet Co.*, 749 S.W.2d 591, 594–95 (Tex.App.—Dallas 1988, writ denied). Plainly, the amended petition was insufficient as a pleading for declaratory judgment attorney's fees. Particularly inasmuch as we cannot determine from this record if this suit was even instituted before Budget sustained its maximum arguable damages, we cannot pass upon the sufficiency of the original petition.

Under the circumstances shown, it would be inappropriate for us to extend this litigation by remanding this collateral issue relating to attorney's fees. We reverse and render the entire case.