NO. 07-01-0252-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



NOVEMBER 27, 2001


______________________________



JOHN SANCHEZ and CONNIE SANCHEZ, individually


and as next friend of REHNAE LEANN SANCHEZ, a child,




 Appellants


v.



SYLVIA GARZA ESPINOZA,




 Appellee

_________________________________



FROM THE 72nd DISTRICT COURT OF LUBBOCK COUNTY;



NO. 98-504,362; HON. J. BLAIR CHERRY, JR., PRESIDING


_______________________________



Before BOYD, C.J., QUINN and REAVIS, JJ.

 John and Connie Sanchez, individually and as next friend of Rehnae Leann
Sanchez, a child, (collectively referred to as Sanchez) appeal from a final judgment
denying them recovery against Sylvia Garza Espinoza. Through one point, they contend
that the trial court erred in overruling their objection to aspects of the closing argument of
Espinoza's attorney. We overrule the point and affirm the judgment.


Background


 Sanchez sued Espinoza for negligence. The cause of action arose from an
automobile collision in which the litigants were involved. Trial was to a jury. While
counsel for Espinoza made his final argument, Sanchez objected, contending that their
opponent was asking the jury to stand in the shoes of and assess liability from the
perspective of Espinoza. The trial court initially sustained the objection but later permitted
her to continue with the allegedly improper argument. The following is the colloquy
depicting the utterances in dispute: (1)

 Nelson: . . . Let's talk about the instructions and definitions, and we have
touched on that briefly. But negligence means the failure to use
ordinary care. It is not just carelessness. And ordinary care means
that degree of care that would be used by a person of ordinary
prudence under the same or similar circumstances.


 Let's put yourself in Sylvia's place. Sylvia is making the left-hand
turn. Sylvia . . .


 Lanehart: Your Honor, I am going to object to putting or placing the jury in the
Plaintiffs' shoes. That is an improper argument.


 Court: Sustained. Reword it a little bit, Mr. Nelson.


 Nelson: Well, you put yourself in the parties' place. You put yourself in his
place, and you put yourself in Sylvia's place, and you put yourself
behind Sylvia's wheel of her car.


 Lanehart: Same objection, Your Honor.


 Court: I am going to overrule. I will let him make the argument.


 Nelson: Ordinary care means that degree of care used by a person or
ordinary prudence under the same or similar circumstances. Let's put
yourself in these same circumstances.


 You are coming around to make the turn. You see a green arrow.


 Lanehart: May I have a running objection to this, your Honor?


 Court: Yes, sir, you may.

 

 Nelson: The last thing you see is a green arrow, before you start your turn,
and then you look into the intersection, and you see there is nobody
in the intersection. We have all been through that intersection
before.


 And you go ahead and start your turn, and you are halfway through
your turn. And all of a sudden, you see the Plaintiffs' vehicle coming. 
You turn to the left to avoid -- hopefully to avoid this collision. When
you get to that intersection, there isn't anybody in it.


 The last thing you saw was the green light. What are you to do? You
feel as though you have every right in the world to enter that
intersection. You feel as though you have every right in the world to
complete your turn.


 Is that negligence? Is that failing to use ordinary care? I maintain
that it is not. Let's put yourself in the Plaintiffs' position. Put yourself
in John's position.


 John is driving a vehicle, the white Suburban. By his own testimony
and confirmation by his wife, they came to the intersection, going
south. They were in the middle lane of traffic. They stopped in
observance of the red light.


 Everybody that has ever driven a vehicle knows that when you stop,
in observance of a red light, you have to stay there until you can
move into the intersection without danger of causing a wreck. And
that puts on us a burden that we have got to watch where we are
going before we start up again. That puts a burden on us before we
start up.


 And if we take his testimony at its word, that '[i]t was a green light,
and I started up,' we have an obligation as a careful driver, as an
ordinary prudent driver, to watch where we are going an [sic].


 And it is undisputed where his head was turned when he pulled out
in that intersection. It is undisputed that he was turned to the right,
and he was talking to his wife. His wife confirms that they were
talking. He confirms that they were talking.


 There is no doubt that when he pulled out, he was looking this way,
and there is no doubt that he had an obligation to be watching where
he was going, to be paying attention. Had he been watching where
he was going, what could he have done?


 He could have exercised ordinary care and stopped or not gone out,
to begin with. And if that had been the case, Ms. Espinoza would
have been able to finish her turn, there would have been no accident,
and we wouldn't be here today.


 Ordinary care is judged by what other people would do in the same
or similar circumstances. Let's take the lady that was to John's right
. . . . The testimony that you have heard about what she did is very
telling.


 If the light turned green for John, then it turned green for her. Did she
pull out into the intersection? Did she have a wreck? No. Did she
pull out in the intersection? No.


 And the reason she didn't, certainly a logical inference from the
evidence is that she saw Sylvia, and because she saw them [sic] in
the intersection making the turn, she didn't pull out.


 What would an ordinary prudent person have done in the same or
similar circumstances? They would have stopped until the
intersection cleared. Is there negligence? Yes. The negligence is on
the Plaintiff, not the Defendant . . . . 


(Emphasis added).

Discussion


 Rule of procedure obligates counsel to confine his argument "strictly to the evidence
and to the arguments of opposing counsel." Tex. R. Civ. Proc. 269(e). This does not
mean that same must be sterile or nondescript. The opposite is quite true for great latitude
is allowed him in discussing the facts and issues. Ramirez v. Acker, 138 S.W.2d 1054,
1055 (Tex. 1940). For instance, he may discuss the "environments" or circumstances of
the case, the reasonableness or unreasonableness of the evidence, and the probative
effect (or lack thereof) of the evidence. Id. So too does he have the leeway to "present
his case as to make the law contained in the charge applicable to the facts of the case." 
Deviney v. McLendon, 496 S.W.2d 161, 166 (Tex. Civ. App.--Beaumont 1973, writ ref'd.
n.r.e.). This leeway also includes the opportunity to encourage the jury to weigh, evaluate,
and test the evidence before it. Gorman v. Life Ins. Co., 859 S.W.2d 382, 389 (Tex. App.--Houston [1st Dist.] 1993, no writ). And, whether counsel's argument exceeded these
expansive boundaries is a decision lying within the discretion of the trial court. Mandril v.
Kasishke, 620 S.W.2d 238, 247 (Tex. Civ. App.--Amarillo 1981, writ ref'd. n.r.e. ). As long
as the decision comports with guiding rules and principles, we must uphold it. 

 Here, Sanchez contends that Espinoza's attorney exceeded the bounds of propriety
when he invited the jurors to put themselves in the place of his client when determining
liability. Admittedly, courts have held as improper argument that asks the jury to stand in
the shoes of a party. See e.g., Fambrough v. Wagley, 140 Tex. 577, 169 S.W.2d 478,
481-82 (Tex. 1943); World Wide Tire Co. v. Brown, 644 S.W.2d 144, 145-46 (Tex. App.--Houston [14th Dist.] 1982, writ ref'd. n.r.e.). This is so because the jurors are being asked
to consider the case from an improper viewpoint, Fambrough v. Wagley, 169 S.W.2d at
482, that is, from the perspective of an interested party as opposed to a neutral fact-finder. 
Moreover, if one were to focus simply upon the suggestion at bar that the jurors place
themselves in the position of Espinoza, there may be a problem. 

 Yet, the trial court was not entitled to isolate the comment from its context. Rather,
it must be analyzed in light of the entire argument. Williams v. State, 826 S.W.2d 783,
785-86 (Tex. App.--Houston [14th Dist.] 1992, pet ref'd). In other words, one looks at the
context of the utterances to determine their propriety. Id. And, the context at bar is most
telling. For instance, immediately before first inviting the jury to place themselves in the
shoes of Sylvia he had told them that "negligence means the failure to use ordinary care
. . . not just carelessness" and "ordinary care means that degree of care that would be
used by a person of ordinary prudence under the same or similar circumstances." 
(Emphasis added). That is, he first told the jury that liability was dependent upon what a
reasonable person would have done under the same circumstances and then he invited
the jurors to place themselves within the car to experience those all important
circumstances. That this is what he intended is exemplified by 1) his stating "[l]et's put
yourself in these same circumstances," 2) then describing for the jury those circumstances
as they unfolded, and then 3) asking "[i]s that negligence" and "[i]s that failing to use
ordinary care?" 

 The same is true when he later urged the jury to "[p]ut yourself in John's position,"
that is, the position of the driver of the other vehicle. After describing the circumstances
encountered by John and the obligations imposed on an ordinary prudent person, he
opined that John's response did not evince ordinary prudence. Simply put, he was again
asking the jurors, who in his view must devine what an ordinary prudent person would have
done under the circumstances, to view those circumstances and decide whether the
response exhibited by John comported with ordinary prudence.

 In sum and when viewed in context, counsel was asking the jurors not to assess
liability as a litigant with an interest in the outcome but as a reasonable person witnessing
the events unfold. That was permissible since final argument may consist of attempt to
structure the evidence in a way "mak[ing] the law contained in the charge applicable to the
facts of the case." Deviney v. McLendon, supra. Consequently, the trial court's decision
comported with controlling authority and evinced a legitimate exercise of discretion. 

 Accordingly, we affirm the judgment.


 Brian Quinn

 Justice



Publish. 


 

1. Attorneys Nelson and Lanehart represented Espinoza and Sanchez, respectively.


 Allstate release went unsigned. 

 The difficulty with Advantage's second ground of opposition to Housour's release
defense, by which Advantage contended the Allstate document was intended to benefit
Allstate only, is that the document does not name Allstate as a party released, but names
Housour. The language of the document stating that it released Housour raises an
inference precluding summary judgment against him on that issue. See Loy, 347 S.W.2d
at 728. Advantage did not meet its burden of establishing as a matter of law its entitlement
to judgment on its counterclaim in the face of Housour's affirmative defense of release. 

 Too, the summary judgment evidence concerning the circumstances surrounding
Advantage's delivery of the release to Allstate, including the evidence of Advantage's
concurrent negotiations with Housour, raises inferences that prevent summary judgment
for Housour on his release defense. See id. 

Housour's Breach of Contract Claim

 Housour's remaining arguments in support of his first issue on appeal contend that
the trial court should have granted him summary judgment on his claims against
Advantage. We begin with his breach of contract claim. (8) The parties' arguments focus on
paragraphs 5 and 6 of the printed Terms and Conditions of the car rental contract. 

 Paragraph 5 provided, in part, "Renter is responsible for and agrees to reimburse
[Advantage] for the actual cash value of all damages in repairing and/or replacing the
rented vehicle . . . ." Paragraph 5 provided for limitations on the renter's responsibility for
damage to the vehicle through purchase of a Loss Damage Waiver. It is undisputed
Housour did not purchase the Loss Damage Waiver option. (9) The paragraph further stated,
"If Renter(s) declines [Loss Damage Waiver] options, Renter(s) shall be responsible for all
damages, any related expenses and fees, and/or loss of [Advantage's] vehicles, regardless
of fault, and agrees to present a claim to his/her automobile insurance carrier and to be
personally liable and pay for all such losses, and/or diminished value of vehicle regardless
of whether [Advantage] elects to repair vehicle."

 Paragraph 6 read as follows: 

BODILY INJURY AND PROPERTY DAMAGE RESPONSIBILITY TO THIRD
PARTIES: Renter(s) agrees to provide primary coverage and/or financial
responsibility for bodily injury and property damage to third parties. Provided
Renter(s) is in full compliance of all the terms and conditions of this
agreement, the Company may provide financial responsibility for bodily injury
and property damage claims asserted by third parties against Renter(s), in
an amount equal to, but not in excess of, statutory minimum limits as
required by the applicable motor vehicle financial responsibility laws of the
state in which the vehicle was rented. In the event of a claim by third party
hereunder the Company's obligation for financial responsibility shall be
EXCESS over any valid and collectible insurance available to Renter(s), but
not to exceed statutory minimum limits, unless otherwise specifically agreed
to in writing by the Company. Any insurance available to the Renter(s) shall
inure to the benefit of the Company insofar as the Company is obligated
under financial responsibility laws of the state where the vehicle is operated. 



 Housour's second amended original petition contains the allegation that Advantage's
ownership of vehicles in Texas requires it to comply with our state's financial responsibility
laws. The petition quotes paragraph 6 of the rental contract, and concludes, "Thus, by
reason of the [financial responsibility laws] and [Advantage's] rental agreement,
[Advantage] agreed to provide to Housour basic minimum limits of property damage liability
in the amount of $15,000.00." The petition goes on to allege that had Advantage's "limits
been paid in addition to Housour's carrier's, all third-party claims would probably have been
extinguished with the two policies' available limits." Advantage's "failure to pay its limits to
the third parties," the petition further alleges, "exposed Housour to personal liability for
these claims." Housour's motion for summary judgment repeated the assertions. 
Advantage's motion for summary judgment contended that paragraph 6 of the rental
contract obligates Advantage to provide "excess financial responsibility" only for the benefit
of third parties. It argued Housour is not a third party, and its obligation under paragraph
6 never came into play because the only third party claimant, Southwestern Bell, was paid
by Housour's carrier Allstate. Advantage also pointed to the provisions of paragraph 5
imposing liability on Housour for damages to the vehicle. 

 Housour relies on Hartford Cas. Ins. Co. v. Budget Rent-A-Car Sys., Inc., 796
S.W.2d 763 (Tex.App.-Dallas 1990, writ denied), in which the court was dealing with the
question whether Budget's car rental contract provided its renter "other insurance" under
the terms of the renter's personal Hartford policy. Budget's contract called for Budget to
provide "liability coverage . . . in accordance with the standard provisions of a Basic
Automobile Liability Insurance Policy." Hartford, 796 S.W.2d at 769. Budget's contract also
provided that its liability coverage would "be used before any other insurance available to
Renter." Id. at 765. Citing that and other contract language, the court concluded Budget
had contracted to provide automobile liability insurance coverage to its renter, and that
obligation was not affected by Budget's decision to operate under a certificate of self-
insurance rather than purchase insurance coverage. Paragraph 6 of Advantage's contract
with Housour does not impose on Advantage obligations like those undertaken by Budget. 
See Rice v. Alamo Rent-A-Car, Inc., 987 S.W.2d 231, 234 (Tex.App.-Beaumont 1999, pet.
denied) (also distinguishing the language in Budget's contract). (10) 

 Moreover, Housour's contention the rental contract obligated Advantage to pay
Southwestern Bell's third-party claim, otherwise payable by Housour's Allstate policy, is
untenable. Paragraph 6 clearly obligated Housour to provide primary coverage for
Southwestern Bell's claim, and equally clearly states that any obligation of Advantage to
satisfy claims of third parties like Bell is excess over any valid and collectible insurance
available to Housour. Further, nothing in paragraph 6 vitiated the obligation Housour
undertook under paragraph 5 to bear responsibility for damages to the vehicle. 

 Nor did Advantage's possession of a certificate of self-insurance impose on it the
obligation to act as Housour's insurer. The Motor Vehicle Safety Responsibility Act does
not require a self-insurer generally to assume the duties of an insurer. See Hertz Corp. v.
Robineau, 6 S.W.3d 332, 336 (Tex.App.-Austin 1999, no pet.); Rice v. Alamo Rent-A-Car,
Inc., 987 S.W.2d at 234. See also Allstate v. Zellars, 462 S.W.2d 550, 552 (Tex. 1970);
Home Indem. Co. v. Humble Oil & Ref. Co., 314 S.W.2d 861, 865 (Tex.Civ.App.-Dallas,
1958) writ ref'd n.r.e., 317 S.W.2d 515 (Tex. 1958). 

 The trial court did not err in granting Advantage summary judgment against
Housour's breach of contract claim.

Housour's Insurance Code and DTPA Claims

 Housour's pleadings alleged that Advantage's actions toward him violated
Sections 4(1), 4(10) and 4(11) of former Article 21.21 of the Insurance Code, (11) which
relate to misrepresentations and false advertising of policy contracts, unfair settlement
practices with respect to a claim by an insured or beneficiary, and misrepresentation of
an insurance policy, and violated Sections 17.46(23), 17.50(a)(3) and 17.50(a)(4) of the
DTPA. (12) "Specifically," he alleged, "for each violation, [Advantage] failed to disclose to
Housour that it had no intention of providing the property damage liability under the
contract and that there was property damage coverage." Advantage's motion for
summary judgment asserted that Article 21.21 applies to those engaged in the business
of insurance, and has no application to self-insured car rental companies like
Advantage. It also argued that its rental contract with Housour contains no property
damage liability coverage. 

 Housour's Insurance Code and DTPA claims are based on the contentions that
the rental contract obligated Advantage to provide him property damage liability
coverage, and Advantage thus was acting as an insurer. We have concluded that the
rental contract did not impose on Advantage the obligation to provide insurance
coverage. Since Advantage did not undertake that obligation, it follows that Advantage
did not incur liability to Housour by any failure to disclose its intentions with respect to it. 
Further, neither Hartford Casualty, 796 S.W.2d 763, nor the other cases to which
Housour cites us provide support for a holding that Advantage's mere possession of a
certificate of self-insurance means that it is acting as an insurer under article 21.21. (13) 

Attorney's Fees

 Housour's last argument concerning the grant of summary judgment to Advantage
is a contention that it presented insufficient proof to support the award of attorney's fees. 
Advantage's pleadings asserted entitlement to attorney's fees under the terms of the car
rental contract, and under Section 38.001 of the Texas Civil Practice & Remedies Code
because its suit was on a contract. (14) We do not reach Housour's contention because our
reversal of the trial court's judgment awarding damages to Advantage requires also
reversal of the award of attorney's fees. See Green Int'l, Inc. v. Solis, 951 S.W.2d 384, 390
(Tex. 1997). 

Continuance

 Housour's second issue argues that the trial court erred in not granting his motion
for continuance. Relying on Tenneco Inc. v. Enterprise Prods. Co., 925 S.W.2d 640, 647
(Tex. 1996), and Laughlin v. Bergman, 962 S.W.2d 64 (Tex.App.-Houston [1st Dist.] 1997,
pet. denied), Housour argues he did not have adequate opportunity for discovery regarding
a revision to Advantage's form of rental contract made after this suit was filed. A decision
to grant or deny a motion for continuance is within the trial court's sound discretion. Villegas
v. Carter, 711 S.W.2d 624, 626 (Tex. 1986). The trial court's action in denying a
continuance will not be disturbed unless the record discloses a clear abuse of discretion.
Id. We agree with Advantage that later revisions made to its rental contract are not
sufficiently material to the claims made by Housour to demonstrate that the trial court
abused its discretion in denying the motion for continuance. See Laughlin, 962 S.W.2d at
65-66. 


Conclusion

 Except as otherwise stated, Housour's issues are overruled. The trial court's
judgment granting Advantage a money judgment, interest and attorney's fees against
Housour is reversed and Advantage's counterclaim is remanded to the trial court. 
Otherwise, the judgment of the trial court is affirmed.

 

 James T. Campbell

 Justice


1. [1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.
2. [2]TXU Utilities also sustained damage to an electric pole in the amount of $2,345. The
record reflects that Housour personally paid TXU $800. Neither TXU nor Southwestern Bell
is a party to this litigation, nor does it appear that either has made further efforts to collect
from Housour or Advantage.
3. [3]Alternative Claims Management, L.L.C., handled the damage claims on behalf of
Advantage. Its employees negotiated with Allstate and Housour. No issue is raised
concerning the company's authority to act on behalf of Advantage. In this opinion, we
attribute actions taken by Alternative Claims Management to Advantage.
4. [4]Appellant's Deceptive Trade Practices Act (DTPA) claims are pursuant to Texas Business
and Commerce Code Annotated §§ 17.46(23), 17.50(a)(3) and 17.50(a)(4) (Vernon 2002
& Supp. 2004). 
5. [5]The Texas Motor Vehicle Safety Responsibility Act requires proof of financial responsibility
as a condition of operating a motor vehicle in the state. Tex. Transp. Code Ann. § 601.051
(Vernon 1999). An entity that has more than 25 vehicles registered in its name can meet
the requirement by qualifying as a self-insurer and obtaining a certificate issued by the
Department of Public Safety. §§ 601.051(5), 601.124.
6. [6]Housour's statement of the issue in his brief also asserts the counterclaim was barred
under the doctrine of accord and satisfaction. His argument, though, relates only to
release. Compare Jenkins v. Henry C. Beck Co., 449 S.W.2d 454, 455 (Tex. 1969) (accord
and satisfaction) with McMillen v. Klingensmith, 467 S.W.2d 193, 195 (Tex. 1971) (release).
7. [7]The one-page release provided by Allstate, an unusual document containing no signature
lines at the document's end, reads as follows:


FULL AND FINAL SETTLEMENT AND RELEASE AGREEMENT


FOR THE SOLE CONSIDERATION OF $ NINE THOUSAND SEVEN HUNDRED EIGHTY
DOLLARS ($9,780.00), as full and final payment, the receipt and sufficiency whereof is
hereby acknowledged, the undersigned, _____________________, Alternative Claims
Management, L.L.C.-which represent: ADVANTAGE RENT-A-CAR HEREBY RELEASES
AND FOREVER DISCHARGES THE INSURER, JEFFREY HOUSOUR and it's agents,
officers, claims adjusters, independent adjusters, private investigations (sic), attorney, and
all other persons, firms, parties and corporations that might be in privity with them, whether
named herein or not, all and each of them, of and from all CLAIMS, DEMANDS,
DAMAGES, ACTIONS, CAUSES OF ACTION FOR ACTUAL OR PUNITIVE DAMAGES,
SUITES (sic), RIGHTS OF RECOVERY of any kind or nature whatsoever, including
prejudgment interest and attorney's fees, which have resulted from the collision/liability loss
suffered by Insured at Highway 79, in Wichita Falls, Texas, or elsewhere, which is alleged
to have occurred on or about January 12, 2001, or rights of action under the Texas
Deceptive Trade Practice Act, Texas Insurance Code Provisions or in tort for any breach
of the implied covenant of good faith or fair dealing or any other type of bad faith tort claims
or extra-contractual damage claims which exist or might be asserted against the parties
released herein, or any other losses which now exist or might be claimed against policy
516073551 or which have arisen due to any investigation, acts, communications,
Examinations Under Oath, or legal actions or otherwise relating to the investigation or
handling of said claim/case.


Liability against Insurer and all other persons and firms above-mentioned is expressly
denied; the consideration for this Release is contractual and not a mere recital; the
payment hereunder represents a compromise settlement of an uncertain, doubtful or
disputed claim and right of recovery, both in contract and tort, and is made to avoid the
trouble and expense of litigation or appeals.

8. [8]Housour's brief on appeal presents a single argument combining its discussion of his
breach of contract, Insurance Code bad faith, and DTPA claims. 
9. [9]See Tex. Rev. Civ. Stat. Ann. art. 9026 (Vernon Supp. 1997).
10. [10]Housour also cites Hardware Dealers Mut. Fire Ins. Co. v. Farmers Ins. Exch., 444
S.W.2d 583 (Tex. 1969), arguing that the rule of repugnancy there discussed requires that
coverage both from Allstate and Advantage be made available to pay all claims asserted
against him. Even assuming, arguendo, that concept had application here, we could not
agree that Housour has been subjected to repugnant conditions in his Allstate policy and
the Advantage rental contract. Allstate paid its policy limits to Advantage and Southwestern
Bell, the only two claimants making claims against Housour.
11. [11]Tex. Ins. Code Ann. art. 21.21 § 4(1), (10) and (11) (Vernon Supp. 2004). Recodified,
effective April 1, 2005, in Tex. Ins. Code Ann. §§ 541.051-.061 (Vernon 2004). Act of June
21, 2003, 78th Leg., R.S., ch. 1274, 2003 Tex. Gen. Laws 3659-63.
12. [12]Housour's petition also alleged Advantage violated Article 21.55 of the Insurance Code. 
Tex. Ins. Code Ann. art. 21.55 (Vernon Supp. 2004). Recodified, effective April 1, 2005, in
Tex. Ins. Code Ann. §§ 542.051-.054. Act of June 21, 2003, 78th Leg., R.S., ch. 1274, 2003
Tex. Gen. Laws 3676-80.
13. [13]Advantage's brief on appeal contains broad statements, unsupported by authority, to the
effect that self-insured rental car companies are not subject to the Insurance Code. Our
affirmance of summary judgment for Advantage on Housour's Insurance Code claims
should not be taken as general agreement with that broad proposition. See, e.g., Tex. Ins.
Code Ann. art. 21.09 § 2. Recodified effective April 1, 2005, in Tex. Ins. Code Ann. §§
4055.014, 4055.051-.053. Act of June 21, 2003, 78th Leg., R.S., ch. 1274, 2003 Tex. Gen.
Laws 4095-96. 
14. [14]Advantage's pleadings also asked for attorney's fees under § 17.50(c) of the DTPA. The
trial court was not asked to make the findings predicate to an award of attorney's fees
under that statute.