**Judy RICE, Appellant,**

v.

**ALAMO RENT–A–CAR, INC., Appellee.**

No. 09–97–00210–CV.

Court of Appeals of Texas, Beaumont.

Submitted Dec. 10, 1998.

Decided March 11, 1999.

**232**

Shane Phelps, DeLeon, Boggins & Icenogle, Austin, for appellant.

William B. Underwood, III, LeBoeuf, Wittenmyer & Underwood, Houston, for appellee.

Before WALKER, C.J., BURGESS and STOVER, JJ.

## OPINION

PER CURIAM.

Appellant Judy Rice ("Rice") sued appellee Alamo Rent–A–Car, Inc. ("Alamo") under the Declaratory Judgments Act. The trial court granted Alamo's motion for summary judgment from which Rice now appeals.

## FACTS

On July 7, 1994, Rice was involved in an accident while driving an automobile she had rented from Alamo that day. Other persons involved in the accident sued her for negligence.[1] At the time of the accident, Rice maintained a liability policy with State and County Mutual Fire Insurance Company ("State and County"). Although Alamo did not have a liability policy as such, the car rental company was self-insured pursuant to the Texas Motor Vehicle Safety Responsibili-

ty Act (the "Act"),[2] as evidenced by Certificate of Self Insurance No. 77, issued by the Texas Department of Public Safety. On behalf of Rice, State and County demanded a defense from Alamo, which the rent-a-car company declined to provide. Both parties petitioned the court for declaratory relief and filed motions for summary judgment.

Alamo sought summary judgment on its counterclaim wherein it petitioned the trial court to declare Alamo had no duty to defend Rice in the Harris County negligence suit and to award statutory attorney's fees. Also seeking a summary judgment, Rice called upon the trial court to declare, as she had requested in her amended petition, that Alamo had the duty to provide her primary liability coverage and to defend her in the negligence suit. The summary judgment granted in favor of Alamo declared that Alamo had no duty to defend Rice. Containing a "Mother Hubbard" clause, the judgment disposed of all the claims in the suit.

## POINTS OF ERROR

In point of error one Rice argues the trial court erred in granting summary judgment in favor of Alamo; in point of error two she contends the trial court erred in denying her summary judgment.

> When, as here, both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review the summary judgment evidence presented by both sides and determine all questions presented. The reviewing court should render such judgment as the trial court should have rendered.

*Commissioners Court of Titus County v. Agan,* 940 S.W.2d 77, 81 (Tex.1997).

■ The Texas Motor Vehicle Safety Responsibility Act requires operators of motor vehicles in Texas to provide proof of financial

---

**1.** The negligence suit, cause no. 95–030196 in the 129th Judicial District Court of Harris County, Texas, is styled *Amalia Miranda, Individually And As Next Friend of Jaime Miranda vs. Alamo Rent–A–Car, Inc. and Judy Rice.*

**2.** Tex.Rev.Civ. Stat. Ann. art. 6701h, the Texas Motor Vehicle Safety Responsibility Act, was repealed by the Texas Legislature in 1995 and recodified at Tex. Transp. Code Ann. §§ 601.001–601.410 (Vernon 1999). The law to be applied in the instant case is the former statute, art. 6701h.

responsibility as a condition of operating a motor vehicle in the state.

Sec. 1A. (a) On and after January 1, 1982, no motor vehicle may be operated in this State unless a policy of automobile liability insurance in at least the minimum amounts to provide evidence of financial responsibility under this Act is in effect to insure against potential losses which may arise out of the operation of that vehicle.

(b) The following vehicles are exempt from the requirement of Subsection (a) of this section:

. . . .

(4) vehicles that are self insured under Section 34 of this Act[.][3]

Directing us to various provisions in the Act, Rice contends that Alamo, as the owner of the vehicle, was bound by law to evidence proof of financial responsibility. Rice, of course, is correct. As required by statute, Alamo did provide proof of financial responsibility through an alternate method allowed under the Act—namely, its Certificate of Self Insurance No. 77. The Act provides, in pertinent part:

### Alternate methods of giving proof

Sec. 18. Proof of financial responsibility when required under this Act with respect to a motor vehicle or with respect to a person who is not the owner of a motor vehicle may be given by filing:

. . . .

4. A certificate of self-insurance, as provided in Section 34, supplemented by an agreement by the self-insurer that, with respect to accidents occurring while the certificate is in force, he will pay the same judgments and in the same amounts that an insurer would have been obligated to pay under an owner's motor vehicle liabili-

ty policy if it had issued such a policy to said self-insurer[.]

### Self-insurers

Sec. 34. (a) Any person in whose name more than 25 motor vehicles are registered may qualify as a self-insurer by obtaining a certificate of self-insurance issued by the Department as provided in Subsection (b) of this Section.

(b) The Department may, in its discretion, upon the application of a person, issue a certificate of self-insurance when it is satisfied [that] such person is possessed and will continue to be possessed of ability to pay judgments obtained against such person.[4]

■ The parties disagree on the application of the language of art. 6701h, § 18(4). In effect, Rice contends the language of the statute mandates that the self-insured party has the same obligations as an insurer under the Act in regard to coverage and, therefore, has the duty to defend her and to provide primary automobile liability coverage. That means, argues Rice, that Alamo has the same obligations as "if Appellee [Alamo] had purchased an automobile liability policy."

After concluding that the provisions of the standard Texas automobile liability policy apply to Alamo, the self-insurer, Rice relies on a provision of the standard policy, as found in section 21(b) of the Act:

(b) Such owner's policy of liability insurance:

. . . .

(2) Shall pay on behalf of the insured named therein and any other person, as insured, using any such motor vehicle . . . with the express or implied permission of such named insured, all sums which the insured shall become legally obligated to

---

3. The session law citation for former art. 6701h § 1A(a) is as follows: Act of May 26, 1983, 68th Leg., R.S., ch. 797, § 1, sec. 1A(a), 1983 Tex. Gen. Laws 4635 (current version at Tex. Transp. Code Ann. § 601.051 (Vernon 1999)).

The session law citation for former art. 6701h § 1A(b) is as follows: Act of May 31, 1987, 70th Leg., R.S., ch. 289, § 1, 1987 Tex. Gen. Laws 1649 (current version at Tex. Transp. Code Ann. § 601.053 (Vernon 1999)).

4. The session law citation for section 18 is as follows: Act of May 29, 1989, 71st Leg., R.S., ch. 449, § 8, sec. 18, 1989 Tex. Gen. Laws 1610, 1614 (current version at Tex. Transp. Code Ann. § 601.124 (Vernon 1999)).

The session law citation for section 34 is as follows: Act of June 7, 1951, 52nd Leg., R.S., ch. 498, sec. 34, 1951 Tex. Gen. Laws 1211, 1225.

pay as damages arising out of the ownership, maintenance or use of such motor vehicle ... [.] [5]

This section requires the *owner's* policy to pay damages arising out of the use of the vehicle by the named insured, as well as those using the vehicle with express or implied permission.

Rice also directs us to the "other insurance" clause in her own policy. This clause, also standard in Texas liability policies, provides that the coverage by her insurance company is excess coverage when she is driving a vehicle she does not own, as stated below: (CR 40)(AEE 2)

> If there is other applicable liability insurance we [State and County] will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits.
>
> However, any liability insurance we provide to a covered person for the maintenance or use of a vehicle you do not own shall be excess over any other applicable liability insurance.

The effect of the two standard insurance policy provisions is to place the obligation of primary coverage on the owner's liability policy. As noted above, Rice contends these two provisions are applicable not only to insurers under the Act, but also to Alamo as a self-insurer. Therefore, she concludes Alamo has a duty to indemnify her and defend her. We, however, do not agree.

The obligations of a self-insurer, as set forth in section 18(4) of the Act, are to "pay the same judgments and in the same amounts that an insurer would have been obligated to pay under an owner's motor vehicle liability policy if it had issued such a policy to said self-insurer[.]" In commenting on the obligations of the self-insured party, the Dallas Court of Civil Appeals in 1958 stated as follows:

> We may properly quote further from appellee's reply brief: "The fallacy of Appellant's position lies in the fact that it makes an unwarranted assumption as to the actu-

al provisions of the Motor -Vehicle law. Appellant proceeds upon the erroneous assumption that by virtue of its certificate of self-insurance appellee has assumed all the obligations which arise under a Texas Standard Policy of Automobile Liability Insurance. Nothing could be further from the truth, for the full extent of the obligations assumed by a self-insurer is set out in Section 18(4) of the Motor Vehicle Safety–Responsibility Act, which provides that the self-insurer shall file with the State an agreement 'that, with respect to accidents occurring while the certificate is in force, he will pay the same judgments and in the same amounts that an insurer would have been obligated to pay under an owner's motor vehicle liability policy if it had issued such a policy to said self-insurer'. To say that a self-insurer will pay the same judgments and in the same amounts as an insurance company would have had to pay is one thing; while it is obvious that to assume all the obligations that exist under a Standard Automobile Liability Policy is quite another thing. A Standard policy calls for the assumption of many obligations other than the payment of a judgment rendered against the insured— among which, and probably the most important, is to indemnify the insured against loss, even as against his own negligence."

*Home Indem. Co. v. Humble Oil & Refining Co.*, 314 S.W.2d 861, 865–66 (Tex. Civ.App.— Dallas 1958) *writ ref'd n.r.e.*, 159 Tex. 224, 317 S.W.2d 515 (1958). Although Rice contends the Act requires the self-insurer to assume the obligations of an insurer, the Act does not contain such a provision. Neither statute nor case law imposes upon Alamo, the self-insurer, a duty to defend or to assume all the duties of an insurer; nor does it make the provisions of the standard Texas automobile policy applicable to self-insurers. See *Allstate Ins. Co. v. Zellars*, 462 S.W.2d 550 (Tex.1970). In short, Alamo satisfied the requirements of the Safety Responsibility Act, which does not impose upon it the duty to defend.

---

**5.** The session law citation for art. 6701h § 21(b) is as follows: Act of May 29, 1989, 71st Leg., ch. 449, § 11, 1989 Tex. Gen. Laws 1610, 1614–15

(current version at TEX. TRANSP. CODE ANN. § 601.076 (Vernon 1999)).

■ Rice also argues on appeal that the Alamo rental contract signed by Rice does not operate to eliminate Alamo's duties under the Safety Responsibility Act.[6] Alamo's motion for summary judgment was predicated upon the provisions in the rental agreement in which Rice declined to purchase the liability insurance offered by Alamo. The applicable provision of the rental agreement provided as follows:

> Unless contrary to state law or otherwise provided by this agreement, if there is no other valid and collectible insurance, whether primary, excess or contingent, available to the renter ... sufficient to meet minimum financial responsibility law requirements, then ... Alamo shall provide protection against liability for bodily injury, death or property damage to others up to the minimum financial responsibility limits required by applicable law. Such protection shall be provided through either an insurance policy or a certificate of self-insurance (if provided, you [Alamo] have no duty to defend after tendering minimum limits). I agree that any amounts over this minimum will be covered by me or my liability policy and I will indemnify you [Alamo] for any losses that exceed minimum limits.

The express language of the rental contract provides that Alamo's liability coverage applies only to the renter who has "no other valid and collectible insurance." It does not apply to the renter, like Rice, who, though given the opportunity, declined to purchase insurance through Alamo and who had a liability policy with State and County. Through her own policy, Rice had "other valid and collectible insurance" available to her, and, therefore, coverage under Alamo's self-insurance certificate did not apply. Since Rice, by virtue of the rental agreement, declined to purchase liability insurance through Alamo, and since she has a liability policy in her own right, Alamo is not required to defend her in the underlying suit.

Rice claims the terms of the rental agreement are subordinated to the requirements of the Safety Responsibility Act detailed above. Even so, we have already determined that Alamo satisfied its duties under the Act. Having declined to purchase insurance offered by Alamo, Rice cannot now hold Alamo to liability coverage she chose not to buy.

Under both the rental agreement and the Safety Responsibility Act, Alamo has no duty to defend Rice in the underlying lawsuit. We overrule points of error one and two.[7]

### ALAMO'S CROSS POINT

In a single cross point, Alamo contends the trial court erred in failing to award Alamo its attorney's fees under the Declaratory Judgments Act. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997). Although the rental car company pleaded for attorney's fees in its counterclaim and also included the claim in its motion for summary judgment, along with a supporting affidavit, the trial court nonetheless refused to award attorney's fees.

In *Bocquet v. Herring*, 972 S.W.2d 19 (Tex. 1998), the Texas Supreme Court once again set out the standard of review for attorney's fees under the Declaratory Judgments Act. To determine the correct standard of review, we look first to the statute. The

---

**6.** Although Rice cites *Hartford Cas. Ins. Co. v. Budget Rent–A–Car Sys., Inc.* 796 S.W.2d 763 (Tex.App.—Dallas 1990, writ denied) in support of her position, *Hartford* is distinguishable from the instant case. In *Hartford*, Budget Rent–A–Car's contract with the renter of the automobile specifically stated that Budget provided liability coverage for the renter and that the liability coverage would "be used before any other insurance available to Renter...." *Id.* at 765. Under the specific terms of the contract between Budget and the renter, Budget, in effect, provided "other valid and collectible insurance" that was primary over the Hartford policy. Thus, the contract in *Hartford* is clearly distinguishable from the rental agreement in the instant case

where Rice expressly declined the insurance offered by Alamo and entered into a contract which specifically provided that any coverage under Alamo's self-insurance status would be excess coverage, not primary.

**7.** Our holding is an affirmation only of the trial court's declaration that Alamo had no duty to defend Rice in the negligence suit. Alamo's motion for summary judgment sought no other declaration. In concluding that Alamo had no duty to defend, we have, of necessity, also concluded that Alamo was not obligated to provide primary coverage.

Declaratory Judgments Act does not require an award of attorney fees to the prevailing party. Rather, it provides that the court "may" award attorney fees. The statute thus affords the trial court a measure of discretion in deciding whether to award fees or not. . . .

In sum, then, the Declaratory Judgments Act entrusts attorney fee awards to the trial court's sound discretion, subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law. It is an abuse of discretion for a trial court to rule arbitrarily, unreasonably, or without regard to guiding legal principles, *e.g., Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex.1997), or to rule without supporting evidence, *Beaumont Bank v. Buller*, 806 S.W.2d 223, 226 (Tex.1991). . . . Unreasonable fees cannot be awarded, even if the court believed them just, *but the court may conclude that it is not equitable or just to award even reasonable and necessary fees.*

*Id.* at 20–21. (emphasis added)

■ In the present case, Alamo's summary judgment evidence included an attorney's affidavit, which stated the attorney's fees were reasonable and necessary, gave the attorney's hourly rate and the number of hours he had expended on the case through trial, and stated the amount to be charged for appeal, if necessary. Rice does not challenge the reasonable or necessary aspect of the attorney's fee. Instead, she simply relies upon the general principle that the decision to grant or deny attorney's fees is within the trial court's sound discretion and claims there is nothing in the record which reveals the trial court's decision to be inequitable or unjust. *See Commissioners Court of Titus County*, 940 S.W.2d at 81. "Whether to award attorney's fees to the prevailing party in a declaratory judgment action where both parties have 'legitimate rights to pursue' remains a discretionary decision of the trial court." *Ghidoni v. Stone Oak, Inc.*, 966 S.W.2d 573, 584 (Tex.App.—San Antonio 1998, pet. filed). Since both parties had legitimate rights to pursue in this declaratory judgment action, we conclude the trial court did not abuse its discretion in denying Alamo's request for attorney's fees. Alamo's cross point is overruled.

The judgment of the trial court is affirmed.

AFFIRMED.