**Moneta Lynn HILL, Appellant,**

v.

**TEXAS COUNCIL RISK MANAGEMENT FUND, Appellee.**

**No. 06–99–00114–CV.**

Court of Appeals of Texas, Texarkana.

Argued April 20, 2000.

Decided May 3, 2000.

Rehearing Overruled May 23, 2000.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

OPINION

Opinion by Justice ROSS.

Moneta Lynn Hill brought suit against her governmental employer's self-insurance fund, Texas Council Risk Management Fund (the Fund), in an attempt to recover uninsured and underinsured benefits for injuries she sustained in the course and scope of her employment. Hill contends that UM/UIM coverage should be presumed to exist as a matter of law because such coverage was not rejected by the insured in writing as required by the Texas Insurance Code. The Fund moved for summary judgment on the ground that the provisions of the Insurance Code do not apply to self-insurance funds for governmental units. The trial court granted summary judgment in favor of the Fund. Hill now appeals the trial court's judgment and contends that 1) UM/UIM coverage should be presumed to exist in favor of Hill because the insured did not reject such coverage in writing as required by the Insurance Code; 2) any future claim for subrogation by the Fund should be offset by any recovery by Hill on her UM/UIM claims; and 3) Hill is entitled to reasonable and necessary attorney's fees for any future recovery from third parties in which the Fund asserts a subrogation interest. We affirm the judgment of the trial court.

 Pursuant to the Interlocal Cooperation Act,[1] the Texas Council of Community MHMR Centers, Inc., in coordination with several mental health/mental retardation community centers, created the Texas Council Risk Management Fund as a means of self-insuring themselves.[2] The

Frank Supercinski, Longview, for appellant.

Rickey L. Faulkner, S. Calvin Capshaw, Brown McCarroll & Oaks Hartline, Longview, for appellee.

1. The Interlocal Cooperation Act permits local governments to contract for the performance of governmental functions and services. See TEX. GOV'T CODE ANN. § 791.001, et seq. (Vernon 1994 & Supp.2000). Under this Act, local governments may contract to form self-insurance funds to cover risks which each member is authorized to protect against. See Op. Tex. Att'y Gen. No. MW–347 (1981).

2. The Fund is governed by a nine-member board of trustees comprised of community MHMR center trustees, and it is administered by a third-party administrator, JI Specialty Services, Inc.

Fund was established to protect the participating MHMR community centers against certain risks that are inherent in operating a local governmental entity. Each participating MHMR community center selected coverages from those offered and made contributions to the Fund as required to maintain the selected coverages. Sabine Valley Center, a MHMR community center, entered into an interlocal agreement with the Fund to provide coverage for workers' compensation, liability, and property risks. This interlocal agreement was in full force and effect at all times relevant to this lawsuit.

On December 7, 1997, Hill was injured in a motor vehicle accident while in the course and scope of her employment with Sabine Valley Center. Hill brought suit against several individuals involved in the accident and alleged that their negligence caused her injuries. In the same action, Hill sued the Fund in an attempt to recover uninsured and underinsured benefits for the injuries she sustained.

In her original petition, Hill alleged that she was insured by an UM/UIM insurance policy issued by the Fund for vehicles owned and operated by Sabine Valley Center. The Fund answered and specially denied that it provided UM/UIM coverage to Sabine Valley Center at the time of the accident in question.[3] The Fund then moved for summary judgment on the following two grounds: 1) the Fund and Sabine Valley Center did not have a contract for UM/UIM coverage at any time relevant to the suit; and 2) the provisions of the Insurance Code do not apply to self-insurance funds for governmental units, and thus UM/UIM coverage cannot be presumed to exist merely because such coverage was not rejected in writing as required by the Code. Hill filed an amended petition and a response to the motion for summary judgment. Hill's amended petition abandoned her claim that the

Fund had contracted with Sabine Valley Center to provide UM/UIM coverage, and instead she alleged that UM/UIM coverage should be presumed to exist as a matter of law because such coverage was not rejected in writing. After holding a hearing on the matter, the trial court granted the Fund's motion for summary judgment, severed the claims against the Fund, and entered final judgment in favor of the Fund. Hill now appeals the trial court's granting of summary judgment.

Pursuant to Rule 166a(c), a traditional summary judgment is proper only if the movant establishes that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991); *see* Tex.R. Civ. P. 166a(c). When a defendant moves for a traditional summary judgment, he must negate at least one element of the plaintiff's cause of action or conclusively establish an affirmative defense. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex.1995). In deciding whether summary judgment is proper, we consider all evidence favorable to the nonmovant as true, and we resolve every reasonable inference in favor of the nonmovant. *American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

In her first point of error, Hill reasserts her contention that UM/UIM coverage should be presumed to exist as a matter of law because such coverage was never rejected in writing as required by the Insurance Code. Hill's argument rests on Section 5.06–1(1) of the Texas Insurance Code, which provides the following, in relevant part:

> No automobile liability insurance ... covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state unless coverage is

---

**3.** The Fund did not offer UM/UIM coverage to any community center at the time of the accident in question. The Fund did not begin

offering such coverage until September 1, 1998.

provided therein or supplemental thereto ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles.... The coverages required under this Article shall not be applicable where any insured named in the policy shall reject the coverage in writing ... .

TEX. INS.CODE ANN. art. 5.06–1(1) (Vernon 1981). Based on Article 5.06–1, courts have held that UM/UIM coverage will be presumed to exist as a matter of law when the insured has not rejected such coverage in writing. *Unigard Sec. Ins. Co. v. Schaefer*, 572 S.W.2d 303, 308 (Tex.1978); *Geisler v. Mid–Century Ins. Co.*, 712 S.W.2d 184, 186 (Tex.App.-Houston [14th Dist.] 1986, writ ref'd n.r.e.); *Employers Cas. Co. v. Sloan*, 565 S.W.2d 580, 583 (Tex.App.-Austin 1978, writ ref'd n.r.e.); *Greene v. Great Am. Ins. Co.*, 516 S.W.2d 739, 740 (Tex.Civ.App.-Beaumont 1974, writ ref'd n.r.e.); *see* TEX. INS.CODE ANN. § 5.06–1 (Vernon 1981 & Supp.2000).

 However, the Texas Legislature has determined that Article 5.06–1 and the other provisions of the Insurance Code do not apply to self-insurance funds for governmental units. Under the law in effect at the time of Hill's accident, former Article 715c, § 4 of the Texas Revised Civil Statutes provided the following, in relevant part:

(a) *Each governmental unit may* issue bonds, the proceeds of which are to be used for all or any portion of a self-insurance fund to protect the governmental unit and its officers, employees, and agents, from any insurable risk or hazard, *or use any funds or money*

*available to the governmental unit for the self-insurance fund.*

(b) The legislature finds and determines that the issuance of bonds or the use of available money for the self-insurance fund is a valid public purpose for each governmental unit.

. . . .

(g) *The provisions of the Insurance Code and other laws of this state relating to the provision and regulation of insurance do not apply to the proceeds of bonds issued or to agreements entered into under this section.*

TEX.REV.CIV. STAT. ANN. art. 715c, § 4 (Act of May 29, 1987, 70th Leg., R.S., ch. 1084, § 4, 1987 Tex. Gen. Laws 3689 (repealed) (emphasis added)) (current version at TEX. GOV'T CODE ANN. §§ 2259.031, 2259.032, 2259.037 (Vernon Pamph.2000)). Where language in a statute is unambiguous, we must construe the statute in accordance with the plain and common meaning of the words and terms used. *Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 939 (Tex.1993); *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 352 (Tex.1990). The plain and unambiguous meaning of Article 715c is that self-insurance funds established by "governmental units" pursuant to this statute are exempt from the Insurance Code. Moreover, the undisputed summary judgment evidence established that Sabine Valley Center is a "governmental unit" for the purposes of Article 715c.[4] Therefore, the plain and unambiguous language of Article 715c dictates that the Insurance Code provisions concerning UM/UIM coverage do not apply to the Fund.

---

4. It was established by affidavit that Sabine Valley Center is a "community center" organized under TEX. HEALTH & SAFETY CODE ANN. § 534.001, *et seq.* (Vernon Supp.2000). The Texas Health & Safety Code provides that a MHMR community center may be a "community center" as defined therein. TEX. HEALTH & SAFETY CODE ANN. § 534.001(b)(3) (Vernon Supp.2000). The Code further provides that a "community center" is a "local govern-

ment." TEX. HEALTH & SAFETY CODE ANN. § 534.001(c) (Vernon Supp.2000). And, for the purposes of Article 715c, a "local government" is a "governmental unit." TEX.REV.CIV. STAT. ANN. art. 715c, § 2(2)(B) (Act of May 29, 1987, 70th Leg., R.S., ch. 1084, § 2, 1987 Tex. Gen. Laws 3689 (repealed)). Therefore, at the time of the accident, Sabine Valley Center was a "governmental unit" as defined in Article 715c.

Yet, despite the unambiguous language of Article 715c, Hill presents several arguments as to why Article 5.06–1 of the Insurance Code should still apply to the Fund. Hill first contends that when construed as a whole, the stated provisions of Article 715c are solely concerned with governmental self-insurance that is funded through *the issuance of bonds.* And, because there is no evidence that the Fund was established through the issuance of bonds, Hill contends that Article 715c should not apply to the Fund.

 Hill's argument is misdirected. Although Hill correctly states that a statute should be construed as a whole, *Morrison v. Chan,* 699 S.W.2d 205, 208 (Tex. 1985), she proceeds to construe Article 715c by reference to isolated portions of that statute. Contrary to Hill's contentions, Article 715c expressly provides that it applies to governmental self-insurance that is *funded by the issuance of bonds or by "money available to the governmental unit for the self-insurance fund."* [5] TEX.REV.CIV. STAT. ANN. art. 715c, § 4(a) (repealed) (emphasis added) (current version at TEX. GOV'T CODE ANN. § 2259.031). Article 715c further states that the Insurance Code will not apply to "the proceeds of bonds issued *or to agreements entered into under this section."* TEX.REV.CIV. STAT. ANN. art. 715c, § 4(g) (repealed) (emphasis added) (current version at TEX. GOV'T CODE ANN. § 2259.037). While it is true that Article 715c is entitled "Issuance of Bonds for Self–Insurance Funds; Risk Retention Groups," [6] the title of a statute is not controlling over the unambiguous language which appears in the body of the statute.[7] *Woodruff v. Laredo,* 686 S.W.2d 692, 695 (Tex.App.-San Antonio 1985, writ ref'd n.r.e.); *Byke v. City of Corpus*

*Christi,* 569 S.W.2d 927, 931–32 (Tex.Civ. App.-Corpus Christi 1978, writ ref'd n.r.e.). The unambiguous language of Article 715c does not limit itself to governmental self-insurance funded through the issuance of bonds. Thus, the fact that the Fund was not established through the issuance of bonds does not preclude the application of Article 715c to the present case.

· Hill next contends that Article 715c does not exempt the Fund from the provisions of the Insurance Code, because courts are required to harmonize the Insurance Code with Article 715c. Again, we disagree. Although Hill is correct in stating that courts should construe statutes so as to harmonize them with other relevant laws, if possible, *La Sara Grain Co. v. First Nat'l Bank of Mercedes,* 673 S.W.2d 558, 565 (Tex.1984); *State v. Standard Oil Co.,* 130 Tex. 313, 107 S.W.2d 550, 559 (1937), Hill overlooks the fact that the plain language of Article 715c is in harmony with the Insurance Code. Article 715c expressly addresses the Insurance Code and states that it does not apply.

 Hill also contends that because the Fund now provides for UM/UIM coverage, it must have a duty to do so. We find no authority to support such a proposition. In fact, the law is to the contrary. A governmental unit may provide insurance coverage, though it has no duty to do so. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.027, *amended by* Act of May 30, 1999, 76th Leg., R.S., ch. 1499, § 1.01, 1999 Tex. Gen. Laws 5164 (governmental units are authorized, though not required, to purchase insurance as protection against claims arising under the Texas Tort Claims Act); TEX. TRANSP. CODE ANN.

---

5. Hill does not contest the fact that the Fund was established with "money available to the governmental unit for the self-insurance fund."

6. It is undisputed that the Fund is not a *risk retention group* created under the federal Liability Risk Retention Act of 1986, 15 U.S.C.A. § 3901, *et seq.* (West 1998).

7. When Article 715c was recodified in the Government Code in 1999, the title of the chapter was changed to the more general "Self–Insurance by Governmental Units." There were no material changes to the substantive provisions of the law. *See* TEX. GOV'T CODE ANN. §§ 2259.031, 2259.037 (Vernon Pamph.2000).

§ 601.007 (Vernon 1999) (governmental vehicles are not required to have liability insurance or any other proof of financial responsibility).

■ Hill also contends that the Texas Motor Vehicle Safety Responsibility Act mandates that self-insurers are subject to the same obligations as regular insurers. However, courts have held to the contrary. Section 601.124 of the Texas Motor Vehicle Safety Responsibility Act merely states that self-insurers are to "pay the same *judgments* in the same amounts as an insurer would be obligated to pay under an owner's motor vehicle liability insurance policy issued to the self-insurer if such policy were issued." TEX. TRANSP. CODE ANN. § 601.124 (Vernon 1999) (emphasis added).

> To say that a self-insurer will pay the same judgments and in the same amounts as an insurance company would have had to pay is one thing; while it is obvious that to assume all the obligations that exist under a Standard Automobile Liability Policy is quite another thing.... A certificate of self-insurance merely shows that the state is satisfied that the holder has the financial wherewithal to satisfy a judgment against it....

*Hertz Corp. v. Robineau*, 6 S.W.3d 332, 336 (Tex.App.-Austin 1999, no pet. h.); *see Rice v. Alamo Rent–A–Car, Inc.*, 987 S.W.2d 231, 234 (Tex.App.-Beaumont 1999, pet. denied), *citing Home Indem. Co. v. Humble Oil & Refining Co.*, 314 S.W.2d 861, 865 (Tex.Civ.App.-Dallas), *writ ref'd n.r.e. per curiam*, 159 Tex. 224, 317 S.W.2d

515 (1958). Indeed, the courts have tended to suggest that a self-insurer's duties under the Safety Responsibility Act are limited to the payment of liability judgments. *Id.* Yet, assuming arguendo that this Act mandates that the Insurance Code provisions concerning UM/UIM coverage apply to self-insurers, the unambiguous language of Article 715c would still exempt *governmental* self-insurers from any such requirements.

We conclude that Hill has failed to present any legitimate basis for avoiding the express language of Article 715c. Article 715c unambiguously provides that the Insurance Code does not apply to self-insurance funds for governmental units established pursuant to the statute.[8] Therefore, UM/UIM coverage cannot be presumed to exist in the present case merely because the coverage was not rejected in writing as required by the Insurance Code. We overrule point of error one.

In her second point of error, Hill contends that any future claim for subrogation by the Fund should be offset by any recovery on her UM/UIM claims. Because we have determined as a matter of law that Hill is not entitled to UM/UIM benefits, the issue of an offset against such a recovery is moot. We overrule point of error two.

■ In her third point of error, Hill contends that she is entitled to reasonable and necessary attorney's fees for any recovery from third parties in which the Fund asserts a subrogation interest. This issue is not ripe for adjudication. There is

---

**8.** The Fund contends that Article 5.06–1 of the Insurance Code does not apply to any type of self-insurance fund—governmental or not. The Fund points out that, by its own terms, Article 5.06–1 applies only to automobile liability *insurance*. And, the Fund argues that self-insurance is not truly insurance at all. *See Hertz Corp. v. Robineau*, 6 S.W.3d 332, 336 (Tex.App.-Austin 1999, no pet. h.). Furthermore, the Fund points out that courts have held that self-insurers do not have all the duties of insurers. *Rice v. Alamo Rent–A–Car, Inc.*, 987 S.W.2d 231, 234 (Tex.App.-Beau-

mont 1999, pet. denied); *Home Indem. Co. v. Humble Oil & Refining Co.*, 314 S.W.2d 861, 865 (Tex.Civ.App.-Dallas), *writ ref'd n.r.e. per curiam*, 159 Tex. 224, 317 S.W.2d 515 (1958).

Indeed, we agree that self-insurers do not have certain duties that insurance companies have. However, no court has addressed whether self-insurers have the duties imposed by Article 5.06–1 of the Insurance Code. We need not address this issue, because Article 715c expressly exempts *governmental* self-insurers, such as the Fund, from the provisions of the Insurance Code.

no evidence that Hill has recovered from third parties, and in turn, there is no evidence that the Fund has recovered its subrogation interest from Hill. "A case is not ripe when its resolution depends on contingent or hypothetical facts, or upon events that have not yet come to pass." *Patterson v. Planned Parenthood,* 971 S.W.2d 439, 443 (Tex.1998), *citing Camarena v. Texas Employment Comm'n,* 754 S.W.2d 149, 151 (Tex.1988). We overrule point of error three.

We affirm the trial court's judgment.