OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

February 22, 2002

Mr. Jim Loyd
Executive Director
Texas Health Care Information Council
Two Commodore Plaza
206 East Ninth Street, Suite 19.140
Austin, Texas 78701

Opinion No. JC-0469

Re:  With respect to information requested from the Texas Health Care Information Council, whether the Council may charge fees under section 108.012 of the Health and Safety Code or section 552.262 of the Government Code, and related questions  (RQ-0425-JC)

Dear Mr. Loyd:

Section 108.012 of the Health and Safety Code permits the Texas Health Care Information Council (THCIC or the Council) to "charge a person requesting public use or provider quality data a fee for the data." TEX. HEALTH & SAFETY CODE ANN. § 108.012(b) (Vernon 2001). The fee "may reflect the quantity of information provided and the expense" the Council incurred to collect and provide the data "and shall be set at a level that will raise revenue sufficient" to operate the Council. *Id.* On the other hand, chapter 552 of the Government Code generally allows a governmental body to levy a charge to provide a copy of more than fifty pages of public information, and the charge reasonably may include "all costs related to reproducing the public information," such as material, labor, and overhead costs. TEX. GOV'T CODE ANN. § 552.261(a) (Vernon Supp. 2002). In setting charges to provide copies of public information, a governmental body must use rules adopted by the Texas Building and Procurement Commission,[1] "except to the extent that other law provides for charges for specific kinds of information." *Id.* § 552.262(a). You believe that section 108.012 of the Health and Safety Code "prevails over the charges for public information established in [chapter 552 of the Government Code] and [Texas Building and Procurement Commission] rules . . . and thus, section 108.012(b) authorizes the THCIC to set its own fees for information developed by it."[2] We conclude that section 108.012 of the Health and Safety Code provides the criteria for fees that the Council must charge in response to a request for public-use data or provider-quality data. Fees for the release of other types of information must be set in accordance with chapter 552 of the Government Code and rules of the Texas Building and Procurement Commission.

---

[1]The Seventy-seventh Texas Legislature abolished the General Services Commission and created the Texas Building and Procurement Commission, to which the Legislature generally assigned the powers and duties that previously had been assigned to the General Services Commission. *See* Act of May 27, 2001, 77th Leg., R.S., ch. 1422, § 1.18(a), (b), 2001 Tex. Sess. Law Serv. 4735, 4739.

[2]Letter from Mr. Jim Loyd, Executive Director, Texas Health Care Information Council, to Honorable John Cornyn, Texas Attorney General (Aug. 30, 2001) (on file with Opinion Committee) [hereinafter Request Letter].

You state that the THCIC has created the "Public Use Data File," which contains more than one hundred "data elements, such as hospital name, patient gender, type of admission, source of payment, principal and other diagnoses, procedures, length of stay, risk of mortality score, severity of illness score, accommodation charges, and ancillary charges." Request Letter, *supra* note 2, at 1. The information is "in an electronic format" and is available for public inspection. *Id.* A copy may be obtained from the Council for $1,000 per calendar quarter. *See id.* We note that the Council makes certain generalized information available at no charge on its website. *See* http:// www.thcic.state.tx.us (last visited Jan. 30, 2002). You ask five questions about the THCIC's fee:

1. The THCIC requests an opinion on whether you concur with our interpretation that section 108.012(b) [of the Health and Safety Code] prevails over the charges for public information established in [chapter 552 of the Government Code] and [Texas Building and Procurement Commission] rules, 1 [Tex. Admin. Code] §§ 111.61-.70, and thus, section 108.012(b) authorizes the THCIC to set its own fees for information developed by it.

2. The THCIC also requests an opinion on whether the THCIC can charge the current fee of $1000 per calendar quarter, which was not entirely derived from a cost-basis calculation. Alternatively, must the agency literally comply with the dictates of section 108.012(b), even if charges based on recovery of operational expenses would be at an increased charge over and above the $1000 now being charged, and certainly more than the charge based on [Texas Building and Procurement Commission] cost rules?

3. Similarly, if a person requests a paper or electronic copy of the [Public Use Data File] that requires a customized presentation of the data, would the THCIC be required to follow [chapter 552 of the Government Code] and [Texas Building and Procurement Commission] rules to determine charges for copies and process- ing fees for this information, or may the THCIC set its own fees in accordance with section 108.012(b)?

4. Assuming the THCIC has authority to adopt its own charges pursuant to section 108.012(b), may the THCIC charge the same fee to each subsequent requester of the same item once a custom report is created particularly for one person? Or once the agency has recovered its initial costs for the report, must it only charge for the cost of copying and accessing the report for a subsequent requester?

> 5. Lastly, in developing its own charges pursuant to section 108.012(b), must the THCIC comply with [Texas Building and Procurement Commission] rule[] 1 [TEX. ADMIN. CODE] §111.64?

Request Letter, *supra* note 2, at 2.

Chapter 108 of the Health and Safety Code creates and provides for the Council. *See* TEX. HEALTH & SAFETY CODE ANN. § 108.001 (Vernon 2001). The Council collects information regarding health care across the state and disseminates it for the benefit of employers and other health-care consumers, as well as health-care providers:

> (a) The council shall develop a statewide health care data collection system to collect health care charges, utilization data, provider quality data, and outcome data to facilitate the promotion and accessibility of cost-effective, good quality health care. The council shall:

> (1) direct the collection, dissemination, and analysis of data under this chapter;

> . . . .

> (6) assure that public use data is made available and accessible to interested persons;

> . . . .

> (8) adopt by rule and implement a methodology to collect and disseminate data reflecting provider quality in accordance with Section 108.010; [and]

> (9) make reports to the legislature, the governor, and the public on:

> (A) the charges and rate of change in the charges for health care services in this state;

> . . . .

> (D) the quality and effectiveness of health care and access to health care for all citizens of this state . . . .

*Id.* § 108.006(a). The Council generally may, on a quarterly basis, collect data from certain providers, including "health care data elements relating to payer type, the racial and ethnic

background of patients, and the use of health care services by consumers." *Id.* § 108.009(a), (k). *But see id.* § 108.009(c), (d) (excepting rural providers, certain hospitals, and individual physicians). The statute provides in particular for collecting and disseminating two types of data: provider-quality data and public-use data.

Provider-quality data substantiates "the extent to which a provider renders care that, within the capabilities of modern medicine, obtains for patients medically acceptable health outcomes and prognoses, after severity adjustment." *Id.* § 108.002(16) (Vernon Supp. 2002); *see* 25 TEX. ADMIN. CODE § 1301.11(30) (2001) (Texas Health Care Information Council, Health Care Information) (defining "provider quality data"); *see also* TEX. HEALTH & SAFETY CODE ANN. § 108.002(15), (19) (Vernon Supp. 2002) (defining "provider" and "severity adjustment"); 25 TEX. ADMIN. CODE § 1301.11(29), (37) (2001) (same). The Council is required to "collect data reflecting provider quality." TEX. HEALTH & SAFETY CODE ANN. § 108.010(a) (Vernon 2001). After the provider-quality data has been collected, reviewed, and revised, the Council must publish the information and make it available to the public, although typically individual physicians' names are replaced with uniform physician identifiers. *See id.* § 108.010(c), (h), (i).

Public-use data is patient-level data "relating to individual hospitalizations." *Id.* § 108.002(17) (Vernon Supp. 2002); *see* 25 TEX. ADMIN. CODE § 1301.11(31) (2001) (defining "public use data file"). Public-use data has not been summarized or analyzed; contains no information that would identify a patient; identifies physicians only by use of uniform physician identifiers; and is severity- and risk-adjusted, edited, and verified for accuracy and consistency. *See* TEX. HEALTH & SAFETY CODE ANN. § 108.002(17) (Vernon Supp. 2002); *see* 25 TEX. ADMIN. CODE § 1301.11(31) (2001) (defining "public use data file"); *see also* TEX. HEALTH & SAFETY CODE ANN. § 108.002(6), (8), (20), (21) (Vernon Supp. 2002) (defining "data," "edit," "uniform patient identifier," and "uniform physician identifier"); 25 TEX. ADMIN. CODE § 1301.011(14), (43), (44) (2001) (defining "edit," "uniform patient identifier," and "uniform physician identifier"). Public-use data may exclude some data elements submitted to the Council. *See* TEX. HEALTH & SAFETY CODE ANN. § 108.002(17) (Vernon Supp. 2002); *see* 25 TEX. ADMIN. CODE § 1301.11(31) (2001) (defining "public use data file"). The Council has prescribed "by rule a public use data file minimum data set that maintains patient confidentiality and establishes data accuracy and consistency." TEX. HEALTH & SAFETY CODE ANN. § 108.006(f) (Vernon 2001); *see also* 25 TEX. ADMIN. CODE § 1301.19(e) (2001) (listing elements comprising minimum data set); *see also id.* § 1301.11(33) (defining "required minimum data set").

Various provisions of chapter 108 provide specifically for the release of the Council's data. The Council must "promptly provide" public-use data and other data collected under section 108.009(*o*)—with the exception of provider-quality data or confidential data—to those who request it. TEX. HEALTH & SAFETY CODE ANN. § 108.011(a) (Vernon 2001). The Council must issue reports at least annually to the governor, the legislature, and the public "using the public use data and other data, records, and matters of record available to it." *Id.* § 108.011(b). The Council also must use public-use data "to prepare and issue reports that provide information relating to providers, such as the incidence rate of selected medical or surgical procedures." *Id.* § 108.011(c). Section 108.012,

which is particularly significant to the issues you raise, is titled "Computer Access to Data" and permits the Council to set charges for the release of certain data:

> (a) The council shall provide a means for computer-to-computer access to the public use data. All reports shall maintain patient confidentiality as provided by Section 108.013.

> (b) The council may charge a person requesting public use or provider quality data a fee for the data. The fees may reflect the quantity of information provided and the expense incurred by the council in collecting and providing the data and shall be set at a level that will raise revenue sufficient for the operation of the council. The council may not charge a fee for providing public use data to another state agency.

*Id.* § 108.012.

On the other hand, under chapter 552 of the Government Code, information that a governmental body has "collected, assembled, or maintained under a law or ordinance or in connection with the transaction of official business" or that another entity has collected, assembled, or maintained "for a governmental body" is generally available to the public. *See* TEX. GOV'T CODE ANN. § 552.021 (Vernon Supp. 2002); *see also id.* §§ 552.002(a), .003(1), .221 (defining "public information" and "governmental body" and requiring governmental body to produce public information in response to proper request). For example, "a completed report . . . made of, for, or by a governmental body" is public information. *Id.* § 552.022(a)(1) (Vernon Supp. 2002). The governmental body may impose a charge for providing a copy of public information "that reasonably includes all costs related to reproducing the public information, including costs of materials, labor, and overhead," unless the request is for fifty or fewer pages of paper records. *Id.* § 552.261(a). The charge for providing a copy of fifty or fewer pages of paper records must be limited to photocopying costs, unless the requested paper records are located either in "two or more separate buildings that are not physically connected with each other"; or in "a remote storage facility." *Id.* In setting its charges for providing copies, including information in electronic media, a governmental body must refer to rules adopted by the Texas Building and Procurement Commission:

> (a) The [Texas Building and Procurement Commission] shall adopt rules for use by each governmental body in determining charges for providing copies of public information under this subchapter and in determining the charge . . . required for making public information that exists in a paper record available for inspection . . . . The rules adopted by the [Texas Building and Procurement Commission] shall be used by each governmental body in determining charges for providing copies of public information and in determining the charge . . . required for making public information that exists in a paper record available for inspection, *except to the*

*extent that other law provides for charges for specific kinds of public information. . . .*

(b) The rules of the [Texas Building and Procurement Commission] shall prescribe the methods for computing the charges for providing copies of public information in paper, electronic, and other kinds of media and the charge . . . required for making public information that exists in a paper record available for inspection. The rules shall establish costs for various components of charges for providing copies of public information that shall be used by each governmental body in providing copies of public information or making public information that exists in a paper record available for inspection.

(c) A governmental body may request that it be exempt from part or all of the rules adopted by the [Texas Building and Procurement Commission] . . . .

(d) The [Texas Building and Procurement Commission] shall publish annually in the Texas Register a list of the governmental bodies that have authorization from the [Texas Building and Procurement Commission] to adopt any modified rules for determining the cost of providing copies of public information or making public information that exists in a paper record available for inspection.

*Id.* § 552.262(a)-(d) (emphasis added). The Texas Building and Procurement Commission's rules are published in title 1, chapter 111, subchapter C of the Texas Administrative Code. *See, e.g.,* 1 TEX. ADMIN. CODE §§ 111.63, .64, .70 (2001) (Texas Building and Procurement Commission, Executive Administrative Division) ("Charges for Providing Copies of Public Information," "Requesting an Exemption," and "The [Texas Building and Procurement Commission] Charge Schedule").

You ask first whether we "concur" with your conclusion that section 108.012(b) of the Health and Safety Code "prevails over the charges for public information established" under chapter 552 of the Government Code and the Texas Building and Procurement Commission's rules. Request Letter, *supra* note 2, at 2. We do, but only with respect to public-use or provider-quality data. By its terms, section 108.012(b) permits the Council to charge a person requesting "public use or provider quality data" a fee that "reflect[s] the quantity of information provided and the expense" of collecting and providing the data and that is "sufficient for the operation of the [C]ouncil." TEX. HEALTH & SAFETY CODE ANN. § 108.012(b) (Vernon 2001). Fees for the release of Council information other than public-use and provider-quality data are subject to chapter 552 of the Government Code and rules of the Texas Building and Procurement Commission. *See* TEX. HEALTH

& SAFETY CODE ANN. § 108.0045 (Vernon 2001) ("Subject to the restrictions of this chapter, the [C]ouncil is subject to the open records law, Chapter 552, Government Code.").

We do not find subsection (b)'s language to expressly apply to computer access to data only or to be ambiguous in this regard. Section 108.012's title, "Computer Access to Data," does not limit the application of subsection (b) to computer access to public-use or provider-quality data unless the subsection's text does so or is ambiguous. *See* TEX. GOV'T CODE ANN. § 311.024 (Vernon 1998) ("The heading of a . . . section does not limit or expand the meaning of a statute."); *Hill v. Tex. Council Risk Mgmt. Fund*, 20 S.W.3d 209, 214 (Tex. App.–Texarkana 2000, pet. denied) (stating that statute's title does not control over statute's unambiguous language).

You ask second whether the THCIC may charge $1000 per calendar quarter for public-use data and provider-quality data under section 108.012. *See* Request Letter, *supra* note 2, at 2. We understand that this amount "was not entirely derived from a cost-basis calculation." *Id*. Rather, you tell us that the Council's executive director determined the fee considering charges that other states levy for comparable information. *See id*. Additionally, the executive director factored in the concern that a high fee would discourage people from purchasing the data and "the expected level of revenues generated would decline." *Id*.; *see* TEX. HEALTH & SAFETY CODE ANN. § 108.012(b) (Vernon 2001).

We conclude that the executive director's decision in this case does not violate the statutory requirement as a matter of law. The legislative history of this provision indicates that the legislature debated whether the state should fund health-care data collection and dissemination or should require the process to be self-supporting—or some combination of the two. *Compare, e.g.*, HOUSE COMM. ON PUBLIC HEALTH, BILL ANALYSIS, Tex. H.B. 2099, 73d Leg., R.S. (1993) (stating that Council would be funded by private gifts, grants, contributions, and data sales to public) *with, e.g.*, JOHN SHARP, TEXAS COMPTROLLER OF PUBLIC ACCOUNTS, GAINING GROUND: A REPORT FROM THE TEXAS PERFORMANCE REVIEW 208 (1994) (recommending that legislature "appropriate sufficient funds from the General Revenue Fund to cover health-care information office's operating costs"); TEXAS HOUSE OF REPRESENTATIVES COMM. ON PUBLIC HEALTH, INTERIM REPORT TO THE 74TH TEXAS LEGISLATURE 34 (1994) (indicating need for "[s]ome state appropriation . . . to cover start-up and ongoing maintenance costs"). Currently, the Council is statutorily authorized to receive "any appropriation, donation, or other funds from the state or federal government or any other public or private source" so long as the donation does not violate the conflict-of-interest provision, section 108.015 of the Health and Safety Code. TEX. HEALTH & SAFETY CODE ANN. §§ 108.006(b)(4), .015 (Vernon 2001); *see* Tex. Att'y Gen. Op. Nos. JM-1019 (1989) at 4 (stating that state agency may not accept donation unless authorized by law to do so); JM-684 (1987) at 2 (same). The Appropriations Act for the current biennium does not appropriate funds explicitly to the Council, although we note that the Department of Health, for which the Council collects data, has been appropriated funds to "[c]ollect, analyze and distribute data concerning health trends, status, and systems as tools for decision-making policy" and to "[c]ollect, analyze and distribute health care data concerning charges, utilization, provider quality, and outcomes." General Appropriations Act, 77th Leg., R.S., II-27, E.1.2, E.1.3 (2001), *available at* Texas Legislative Reference Library, *and at* http://www.lbb.state.tx.us. Given that the Council appears to receive revenue from sources other

than fees for data under section 108.012(b), it is not necessary that the Council recoup one hundred percent of its operating costs from the fees, although the Council must raise a sufficient amount to pay, with the other revenues, all of the Council's operating expenses. Thus, we construe section 108.012(b)'s requirement that fees "be set at a level that will raise revenue sufficient for" the Council's operation to indicate that fee revenues must be sufficient, with the Council's other revenues, to cover all of the Council's expenses. TEX. HEALTH & SAFETY CODE ANN. § 108.012(b) (Vernon 2001). Furthermore, once the necessary amount is determined in any year's budget, section 108.012 does not preclude the Council from seeking to sell more copies of the data at a lesser fee rather than fewer copies of the data at a higher price. For example, if the total sum to be raised is $1,000, the Council could choose to sell 100 copies at $10 each or ten copies at $100 each. Either way, the Council raises the requisite sum. From your account, we gather that the Council has decided to favor selling more copies at a lesser price, and this decision does not violate section 108.012's mandate as a matter of law. Whether fees in any particular year are set high enough to "raise revenue sufficient for the operation of the council" is a fact-bound issue that this office will not consider. *See, e.g.*, Tex. Att'y Gen. Op. Nos. JC-0032 (1999) at 4 (stating that question of fact is beyond purview of this office); JC-0027 (1999) at 3 (stating the questions of fact cannot be addressed in attorney general opinion); JC-0020 (1999) at 2 (stating that investigation and resolution of fact questions cannot be done in opinion process).

You ask third whether the Council may set its own fees in accordance with section 108.012(b) to produce "a paper or electronic copy" of the public-use data file, where the requestor seeks the information in a customized form. Request Letter, *supra* note 2, at 2. Consistently with our answer to your second question, we conclude that the Council may. The Council need not comply with the requirements of chapter 552 of the Government Code or the Texas Building and Procurement Commission's rules thereunder. Rather, in accordance with section 108.012, the Council may impose a fee that reflects "the expense incurred . . . in collecting and providing the data" and that must be sufficient to cover Council operating expenses. TEX. HEALTH & SAFETY CODE ANN. § 108.012(b) (Vernon 2001). We assume that the public-use data file is public-use or provider-quality data for the purposes of section 108.012(b). *See id.* §§ 108.002(16), (17), .012(b) (Vernon Supp. 2002); *see also* 25 TEX. ADMIN. CODE § 1301.11(30), (31) (2001).

Fourth, you assume that the THCIC may adopt its own charges under section 108.012(b) and ask whether the Council "may . . . charge the same fee to each subsequent requester of the same item once a custom report is created particularly for one person." Request Letter, *supra* note 2, at 2. Assuming that the information requested is public-use or provider-quality data, we conclude that the Council may set its own fees to produce the data in a customized form a subsequent time. Section 108.012(b) states that the Council may set a fee that reflects "the quantity of information provided and the expense incurred by the council in collecting and providing the data," but the Council need not do so. TEX. HEALTH & SAFETY CODE ANN. § 108.012(b) (Vernon 2001). Thus, the fact that the majority of the Council's expenses in preparing the data in a customized form are incurred in response to the initial request may, but need not, be a factor that reduces the fee for subsequent productions. Of course, the fees collected from all requesters must be sufficient, with all other sources of revenue, to cover the Council's operating costs. *See id.*

You finally ask whether, in developing its own charges to produce public-use and provider-quality data under section 108.012(b), the Council must comply with title 1, section 111.64 of the Texas Administrative Code. Adopted by the forerunner to the Texas Building and Procurement Commission, *see supra* note 1, section 111.64 requires a governmental body to request an exemption from the Texas Building and Procurement Commission's rules relating to open-records requests, particularly if a state agency's charges to recover costs exceed those established by the rules. *See* 1 TEX. ADMIN. CODE § 111.64(a), (b) (2001) (General Services Commission, Executive Administration Division). The rule indicates that it was adopted in accordance with the Commission's authority under section 552.262 of the Government Code, which permits the Commission to adopt rules for use "by each governmental body . . . under this subchapter." TEX. GOV'T CODE ANN. § 552.262(a) (Vernon Supp. 2002); 1 TEX. ADMIN. CODE § 111.64(a) (2001).

With respect to fees for requests for public-use or provider-quality data, the Council is subject to section 108.012(b), which specifically applies to these fees, rather than the more general fee provisions in chapter 552 of the Government Code. To the extent that a general law conflicts irreconcilably with a specific one, the specific provision is construed to create an exception to the general one unless the general provision is the later adopted and the legislature manifestly intended that the general provision prevail. *See* TEX. GOV'T CODE ANN. § 311.026 (Vernon 1998). The current version of section 552.262 of the Government Code was adopted, for our purposes, on May 29, 1995. *See* Act of May 29, 1995, 74th Leg., R.S., ch. 1035, § 17, 1995 Tex. Gen. Laws 5127, 5136-37. Section 108.012 of the Health and Safety Code was adopted only a few weeks earlier, on May 12, 1995. *See* Act of May 12, 1997, 75th Leg., R.S., ch. 261, § 11, sec. 108.012(b), 1997 Tex. Gen. Laws 1204, 1211. Yet, though section 552.262 of the Government Code is the later enacted statute, we find no manifest intent that it prevail over an inconsistent special statute. To the contrary, section 552.262 contemplates that the information of some agencies will be subject to specific statutes: "The rules adopted by the . . . Commission shall be used by each governmental body in determining charges for providing copies of public information . . . *except to the extent that other law provides for charges for specific kinds of public information*." TEX. GOV'T CODE ANN. § 552.262(a) (Vernon Supp. 2002) (emphasis added); *see also* Tex. Att'y Gen. Op. No. MW-163 (1980) at 1 ("[W]here another statute sets a fee for providing a specific document to a member of the public, your office should charge the statutorily established fee and not use the fee schedule prepared by the Board of Control."). In a similar way, this office has construed section 552.272 of the Government Code, which generally restricts a governmental body's authority to charge for access to and copies of electronically maintained public information, to yield to a specific statute that authorizes county commissioners courts to impose such a charge. *See* TEX. GOV'T CODE ANN. § 552.272 (Vernon Supp. 2002); Tex. Att'y Gen. ORD-668 (2000) at 8 ("Where another statute sets a fee for providing copies of specific information to the public, that statute prevails over the more general cost provisions of" chapter 552, Government Code). Therefore, the Council need not comply with title 1, section 111.64 of the Texas Administrative Code.

# S U M M A R Y

The Texas Health Care Information Council, for which chapter 108 of the Health and Safety Code provides, *see* TEX. HEALTH & SAFETY CODE ANN. § 108.001 (Vernon 2001), is required to collect information regarding health care across the state and to disseminate it for the benefit of employers, other consumers, and health-care providers. *See id.* § 108.006(a). Chapter 108 provides in particular for collecting and disseminating two types of data: provider-quality data and public-use data. *See id.* §§ 108.010, .011. The legislature, in section 108.012(b), has specifically authorized the Council to charge a fee for the release of public-use or provider-quality data to any person requesting it. *See id.* § 108.012(b). Consequently, with respect to the release of public-use or provider-quality data, the Council need not comply with the fee provisions of chapter 552 of the Government Code and rules adopted under section 552.262 of the Government Code. The Council may determine a fee to release public-use and provider-quality data that, together with the Council's revenues from other sources, will be sufficient to raise revenues for the Council's operation.

In response to a request for a paper or electronic copy of the public-use data file that requires the Council to present the information in a customized form, section 108.012(b) authorizes the Council to set its own fees, assuming that the request is for the public-use or provider-quality data file. The Council may charge the same fee to a subsequent requestor of the customized information.

In setting its charges to produce public-use and provider-quality data under section 108.012(b), the Council need not request an exemption from the Texas Building and Procurement Commission under title 1, section 111.64 of the Texas Administrative Code.

Fees for the release of information other than public-use and provider-quality data must be set in accordance with chapter 552 of the Government Code and rules of the Texas Building and Procurement Commission.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN DENMON GUSKY
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General, Opinion Committee